MARY J. JUDGE, Appellee, v. JOHN JORDAN *et al.*, Appellants.

1. **Intoxicating Liquors**: SALES CONTRARY TO LAW: DAMAGES: EVIDENCE: VERDICT. The credibility of the testimony of a witness is for the jury to determine, and its verdict will not be set aside, because the testimony whereon it is based is apparently in conflict with that given by the witness upon another trial.

2. ———: ———: ———: ———: ADMISSIONS: INSTRUCTIONS TO JURY. Facts testified to by a party to a cause against his interest, if unquestioned, have the force of an admission as against the party so testifying, and the jury may be so instructed.

3. ———: ———: ———: INSTRUCTIONS. In an action by a married woman against a saloon keeper for damages on account of the sale of intoxicating liquors to her husband, proof of having furnished intoxicating liquors to the husband upon the order and promise of payment by a third person is sufficient to sustain the action.

| 81 | 519 |
| 91 | 234 |

| 81 | 519 |
| 113 | 174 |

| 81 | 519 |
| 124 | 251 |

| 81 | 519 |
| 127 | 692 |

| 81 | 519 |
| 140 | 145 |

4.   —— : —— : —— : ——.   Instructions requested by a party to a cause not pertinent to the issues, or with reference to questions upon which no evidence was introduced upon the trial, should be refused.

5.   —— : —— : —— : ——.   An instruction to a jury, that if they found that a witness had testified falsely as to material matters knowingly and intentionally, they *might* disregard his testimony altogether, is not erroneous.

6.   —— : —— : —— : VERDICT : PRACTICE.   The jury were directed by the court that in the event of their finding a verdict against the defendant Jordan, they should answer a certain interrogatory submitted with the instructions, and return same with their general verdict.   The jury returned a verdict against Jordan without answering the interrogatory.   After the verdict had been marked filed, and had been read by the court, the court returned it to the jury with the verbal direction that they "retire and consider further of their verdict, and return a verdict with answer to the special interrogatory submitted in the charge of the court."   *Held*, that the action of the court was proper, and that defendants were not prejudiced thereby.

7.   —— : —— : —— : HUSBAND AND WIFE : DECLARATIONS.   In an action by a married woman proof of the declarations of her husband, alleged to have been made while acting as the agent of the wife, are not admissible in evidence against the wife in the absence of proof of such agency.

*Appeal from Clinton District Court.* — HON. A. HOWAT, Judge.

WEDNESDAY, OCTOBER 29, 1890.

PLAINTIFF, for cause of action against the defendant Jordan, alleges that on the second day of January, 1887, at the "Elkhorn saloon, kept by said Jordan, in the city of Lyons, said Jordan sold intoxicating liquors to the plaintiff's husband, Michael H. Judge, contrary to law, thereby causing her husband to become intoxicated in consequence of which she has been injured in her means of support, and put to expense for medicines, and medical and surgical treatment of her husband." Plaintiff alleges that the property, wherein the saloon was kept and the liquors sold, was the property of defendant, Patrick O'Conner, and was used by Jordan

for said unlawful business, with the knowledge of the defendant O'Conner. The defendant Jordan answered denying generally, and defendant O'Conner answered admitting that he was the owner of the premises described, and denying any knowledge as to the other allegations of the petition. Trial to a jury, and verdict and judgment for plaintiff. The defendants appeal.

*W. C. Grohe* and *Ellis & McCoy*, for appellants.

*J. S. Darling* and *J. H. Flint*, for appellee.

GIVEN, J.—I.   A brief statement of the undisputed facts is necessary to an understanding of the questions discussed.   On and for some time prior to January 2, 1887, the defendant Jordan kept a saloon known as "The Elkhorn," in the premises described, under a lease from defendant O'Conner.   On Sunday, January 2, 1887, a fire broke out in a building near the saloon belonging to Mr. Gage.   During the fire, the saloon was kept open and warm, and resorted to by many persons to warm themselves, the day being exceedingly cold ; and some property taken from the burning building was deposited in the saloon.   Mr. Gage said to defendant Jordan : "Give the fire department a round on me.   I will pay for it."   Jordan and his bartender dealt out intoxicating liquors, for which Mr. Gage afterwards paid.   Plaintiff's husband was at his home when the alarm of fire was given, and proceeded at once to the burning building, where, in common with many other citizens, he assisted in removing property from the burning building.   While so engaged, he took a drink from a bottle of whiskey that was passed among the men at a ladder at the building.   In the evening, plaintiff's husband was found lying in an alley so intoxicated as to be unable to help himself.   He was carried by the police to the city lock-up, put in a bunk, and a fire built in the stove.   An officer visited the lock-up about nine and half past two in the night, and on the last visit a

1. INTOXICATING liquors : sales contrary to law: damages: evidence: verdict.

physician was called, who, finding the patient uncon-
scious, and the prison very cold, ordered him removed
to a boarding-house near by.   Plaintiff's husband was
so badly frozen as to totally disable him, and to require
treatment for many months, and to necessitate the ampu-
tation of one of his legs.   He was then aged twenty-
eight years, and, prior to these injuries, was an able-
bodied man, and able to earn from one dollar and fifty
cents to one dollar and seventy-five cents per day in his
business as a laborer.   There is a conflict in the testi-
mony as to whether plaintiff's husband got any intoxi-
cating liquors from defendant Jordan, or at his saloon,
and whether the defendant O'Conner knew that Jordan
was selling intoxicating liquors, contrary to law, on the
leased premises.

Following the order of the arguments, we first notice
appellants' complaint that the court erred in overruling
the motion to set aside the verdict, and in rendering
judgment thereon, because the verdict was not sustained
by the evidence.   Augustus Hurlburt testified that dur-
ing the fire he and Mr. Judge went into Jordan's saloon
with others, and that he and Judge drank whiskey there
out of the same bottle ; that neither of them paid for it ;
and that Jordan and his bartender were there at the
time.   Hurlburt's testimony, as given on a former trial
of this plaintiff against one Boock, to recover for injuries
caused by the same intoxication, is in evidence, and is
claimed to be in direct contradiction of that given on this
trial, and that Hurlburt is not, therefore, entitled to
credit.   On the former examination, he testified to
Judge's drinking out of the bottle at the ladder, and
to his drinking in Boock's saloon.   He was not asked
as to his drinking in Jordan's, and the only statement
made in conflict with his testimony in this case is, that
he did not see Judge take more than those two drinks.
It was for the jury to say what credit, if any, should be
given to Hurlburt's testimony, and we think, in view
of the corroborating circumstances, that they were war-
ranted in accepting it as true.   Under the order from
Gage, liquors were dealt out freely by Jordan on that

occasion. True, he says only to the firemen, but the jury might well have found that both Gage and Jordan meant by "firemen" those who were engaged in trying to save Mr. Gage's property. The circumstances were certainly corroborative of the testimony, which, thus corroborated, so far sustains the verdict as that it should not be interfered with.

II. The court says in its instructions: "It is admitted by defendant Jordan that at the time of the fire one James P. Gage said to him to give the firemen a round, and he would pay for it; and it is further admitted by said Jordan that, upon said direction of said Gage, he did, in his saloon, furnish the firemen intoxicating liquors, for which said Gage subsequently paid him." Appellants concede that Jordan so testified, but contend that it was not an admission, because not stated in the pleadings. These statements of Jordan's in his testimony are not questioned, and it was not error to say to the jury that they were admitted by Jordan.

*2. ——: ——: admissions: instructions to jury.*

III. Based upon these admissions, the court charged the jury that, if Jordan or his bartender, acting upon the direction of Gage, furnished Judge intoxicating liquors, "or furnished it to others in his saloon, from whom the plaintiff's husband obtained it, then it was a selling to said Gage and the plaintiff's husband, substantially as alleged in plaintiff's petition." Appellants suppose a case where A sold to B, and B subsequently, upon his own account, sold to C, and contend that A is not liable for the sale to C. Such is not this case. It was submitted to the jury upon the theory that defendant was liable, if, upon the order of Gage, he furnished intoxicating liquors to plaintiff's husband. The instruction states the law correctly, as applied to the issues in this case.

*3. ——: ——: ——: instructions.*

IV. Appellants asked an instruction to the effect that there was no testimony tending to show that the liquors which Judge drank from the bottle at the ladder or elsewhere out of Jordan's saloon were furnished by Jordan, and complains of the

*4. THE same.*

refusal to give this instruction. The court so instructed the jury as to the liquors drank from a bottle at the ladder. The only other drink that Judge was shown to have taken outside of Jordan's saloon was at Boock's, and there was no pretense that it was furnished by Jordan. If there was any error, it was in instructing that there was no evidence tending to show that the bottle of liquor was furnished by Jordan. The order of Gage, and Jordan's acting upon it, and the fact that the bottle of liquor was taken to the place of the fire, and drank by men engaged in removing property and extinguishing the fire, surely had such a tendency; but, if the giving of this instruction was error, it was without prejudice to appellants. Other instructions refused were to the effect that, if Judge helped himself to Jordan's liquors without Jordan's knowledge, or if he got the liquor by appearing in the guise of a fireman, that would not constitute a sale as charged. There was no testimony calling for such instructions, and, therefore, no error in refusing them.

V. In instructing the jury as to the rules for determining the credibility of witnesses, they were told that if they found that a witness had testified falsely as to material matters, knowingly and intentionally, they *might* disregard his testimony altogether. Appellants contend that they should have been instructed that in such case the testimony *must* be disregarded in all matters, unless corroborated. The testimony is left with the jury, and it is for the jury to say what credit and weight, if any, shall be given to it. If, by reason of his having intentionally testified falsely as to one material matter, they believe him unworthy of credit as to all other matters, they should disregard the entire testimony; but if they believe any part of his testimony to be true, though not corroborated, it is their privilege to accept it. To say that in such case they must disregard the entire testimony would be to direct the jury to disregard testimony which they believe to be true. We think the instruction announces the

5. THE same.

correct rule.   Whart. Crim. Ev., sec 380 ; *State v. Wells,* 46 Iowa, 662.

VI.   The jury were directed, in the event they found for the plaintiff against the defendant Jordan, to answer the following interrogatory : "Did the defendant O'Conner have knowledge on or before the second day of January, 1887, that said Jordan was keeping for sale or selling intoxicating liquors in the saloon occupied by him ?"  The jury returned into court with a verdict in favor of the plaintiff for fifteen hundred dollars, but without any answer to the interrogatory.  The verdict was marked "Filed" by the clerk, and passed to and read by the court ; and thereupon the court returned the verdict to the jury, and directed them "to retire and consider further of their verdict, and return a verdict with answer to the special interrogatory submitted in the charge of the court."   Thereafter the jury returned into court the same verdict, and an affirmative answer to the interrogatory.   Appellants complain of the refusal of the court to record the verdict as first returned, and of the court's charging the jury verbally to consider further of their verdict, and of the recording the verdict last returned. *Rowell v. Williams,* 29 Iowa, 210, is relied upon by appellants.   That was an action against three defendants to recover damages on account of personal injuries. The jury returned a verdict of seven hundred dollars against one defendant (the city), and five hundred dollars against each of the other defendants.   The court said to them that they could not thus divide upon their verdict, but must find a gross sum against all of the defendants, or in favor of all.   The second verdict returned was against the defendant city alone for eight hundred dollars, one hundred dollars of which was remitted.   This court held "the verdict, since the entry of *remittitur,* is precisely as it was and would have been but for the action of the court in directing the jury to bring in a new or amended verdict.   The city cannot complain that plaintiff lost the benefit of the one

*6. —: —: —: verdict: practice.*

hundred dollars against the other defendants, for it is just what was first assessed, and not a cent more. Suppose there was a technical error, there was no possible prejudice.'' The same can be said in this case. Appellants cannot complain, for they pay just what was first assessed, and not a cent more. There was no error in requiring the jury to answer the interrogatory before receiving and recording their verdict.

VII. Appellants, having shown that plaintiff's husband was examined as a witness upon the trial of the case against Boock, offered to prove what he testified to as to having got liquor on the day of the fire at Jordan's saloon. Appellee objected as immaterial, irrelevant and incompetent, and the objection was sustained. Appellants claimed this testimony to be admissible, on the grounds that the husband was in some sense acting as agent of his wife. They fail to point out, and we to observe, wherein the relation of principal and agent existed in the transaction under consideration. He was not acting for her in procuring the liquors and becoming intoxicated. If it be true, as stated, that she called him as a witness in the former trial, that did not obligate her to call him in this, nor commit her to the statements in his former testimony. It is a matter of common observation that husbands are not always favorable to the prosecution of cases like this by their wives. The testimony offered was incompetent, and, therefore, properly excluded. There was no error in admitting the testimony tending to show that defendant furnished liquors to the firemen. It was for the jury to say who were included as firemen, and whether, in so directing, Gage did not have in mind all who were assisting in the preservation of his property, and whether Jordan did not so understand it.

There was no error in excluding the testimony offered by defendants as to the purpose for which the saloon was open during the fire. That it was open does not create any liability; nor is it any defense that it was open for the purpose of placing goods therein from the

burning building, or permitting the citizens engaged in. suppressing the fire to go there and warm themselves.

We have examined the entire record with reference to the numerous assignments of errors with care, and reach the conclusion that the judgment of the district court should be AFFIRMED.