## Emma Johnson v. N. J. Gram and W. T. Hays.

1. INTOXICATING LIQUORS—*Construction of the Dram Shop Act.*— The dram shop act (R. S., Chap. 43) must be given such a construction as will, without doing violence to its terms, carry out its spirit and accomplish the purposes set out in its title—:"To provide for the licensing of and against the evils arising from the sale of intoxicating liquors."

2. SAME—"*Treating.*"—Several men were in a dram shop indulging in the practice of "treating" each other to intoxicating liquors. One of them became so intoxicated that in crossing a railroad track in going home he was killed by the cars; it did not appear from the evidence that he paid for any of the liquors, but drank them upon the "treat" of the others. The liquor was set out upon the bar for him to drink, and he drank it in the presence of the dram shop keeper. *Held*, that such a sale was within the meaning of section 9 of the dram shop act (R. S., Chap. 43), and the dram shop keeper was liable.

Action on the Case, under section 9 of the "dram shop act." Error to the Circuit Court of Warren County; the Hon. HIRAM BIGELOW, Judge, presiding. Heard in this court at the May term, 1897. Reversed and remanded. Opinion filed December 17, 1897.

J. H. HANLEY and GRIER & STEWART, attorneys for plaintiff in error.

In construing penal statutes we must not, by defining, defeat the obvious intention of the legislature. Potter's Dwarris on Statutes, etc., page 247.

For the sure and true interpretation of all statutes in general, be they penal or beneficial, restrictive or enlarging of the common law, four things are to be discerned and considered: (1) What was the common law before the making

of the act.   (2) What was the mischief and defect against which the common law did not provide.   (3) What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth.   (4) The true reason of the remedy.   Potter's Dwarris on Statutes, etc., page 184.

Statutes must be interpreted according to the intent, and not always according to the letter.   A thing within the intention is within the statute, though not within the letter; and a thing within the letter is not within the statute unless within the intention.   Connolly v. The People, 42 Ill. App. 36.

The dram shop act is penal and must receive a strict construction, keeping in view the great central object the legislature had in view in its enactment, and the evils to be prevented.   Albrecht v. The People, 78 Ill. 510.

COOKE & STEVENS and GEORGE M. HOFFHEIMER, attorneys for defendants in error.

The dram shop act is a statute of a highly penal character, and provides rights of action unknown to the common law, and should, according to well understood canons, receive a strict construction.   Cruse v. Aden, 127 Ill. 231; Meidel v. Anthis, 71 Ill. 241; Freese v. Tripp, 70 Ill. 496.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case brought by plaintiff in error against defendants in error, to recover damages for injury to her means of support, occasioned by the death of her husband, William Johnson, while in a state of intoxication, caused, as it is alleged, in whole or in part by liquors sold or given by defendants in error, who were dram shop keepers in the city of Monmouth, on the 20th day of July, 1893.

There was a trial by jury and verdict in favor of plaintiff in error for $275.   Being dissatisfied with the amount of damages assessed, she entered a motion for new trial, which, being overruled, judgment was rendered on the verdict, and she prosecutes this writ of error.

Various errors are assigned upon the record, but the most serious complaint is made as to the action of the court in giving, refusing and modifying instructions. Whether the court erred in this matter depends upon the proper construction to be put upon section 9 of the dram shop act under which this suit is brought.

The evidence shows that on the day of his death, the deceased, William Johnson, one Thomas Bell, the witness Wyatt, and others, were drinking together in the saloons of defendants in error. The deceased became so intoxicated that he had to be helped into his wagon. He was incapable of managing his team, which, getting beyond his control, attempted to cross the railroad tracks when the gates were down for an approaching train, and while doing so, Johnson fell out of his wagon, the moving train passed over him and caused his death. From all the evidence we think it is clear that Johnson's death was the direct and proximate result of his intoxication, and but for that he would not have been killed. While the evidence is clear enough that Johnson became intoxicated in the saloons of defendants in error, there is no satisfactory proof that they sold or gave him any intoxicating liquor directly. Such liquors as he drank and which caused his intoxication were paid for by persons who called deceased and others up to the bar, and " treated " them at several different times within the space of an hour or two. Bell and Wyatt appear to have done the treating (so far as the evidence shows with any certainty), the manner of it being that the several parties, including Johnson, were ranged up in front of the bar, and Bell or Wyatt would call for the drinks, when the liquors severally called for by the parties would be set in front of them individually by the bar keeper, and drank in the presence of the latter, being paid for by the person calling for the liquors or standing the " treat." In this manner Johnson continued drinking until he became intoxicated with the result above mentioned.

Under this state of facts it is contended by defendants in error that there is no liability, and at their instance the

court gave several instructions to the jury, holding the law to be as claimed by them. The following is one of such instructions, viz. :

" In this case if the preponderance of the evidence shows that William Johnson did not himself purchase any of the intoxicating liquors proven to have been drank by him at the saloons of either of the defendants, then you can not find that either of the defendants sold him any liquor. And if the preponderance of the evidence shows that another person treated the party, of which William Johnson was one, that they all stepped up to the bar and received the liquor from the bar tender, to which they were treated by such person, and if among such party so treated and getting and drinking intoxicating liquor was William Johnson, but the other and treating party paid for the intoxicating liquor, and it was set out on his credit and with the expectation both on his part and that of the bar tender that it would be paid for by him, the treater, such an act if done in good faith can not be construed as a gift of liquor to William Johnson by any defendant, but was a gift from such treating party. And from proof of such act alone the jury can not find that either defendant sold or gave intoxicating liquor to William Johnson, or that either defendant was or is guilty."

Instructions embodying the opposite of the proposition contained in the foregoing, were asked by plaintiff in error and refused by the court, so that the question is fairly presented by this record, whether a dram shop keeper, who dispenses liquor over his bar, under the system of " treating," whereby one of a number of men partaking of such liquor becomes intoxicated (although not himself calling for any liquor, or directly paying for the same), and in consequence and as a direct result of such intoxication loses his life, is liable, under the statute, to one who is injured in his or her means of support by reason of such death.

As we have already said, this question must be determined by the construction to be placed upon the dram shop act.

That this is a serious and important question, involving

doubt and difficulty, may be conceded at the outset, because on the one side it is held that the dram shop act is a statute of a highly penal nature and should receive a strict construction (Cruse v. Aden, 127 Ill. 231), and on the other hand it has been held that the statute was designed for a practical end, to give a substantial remedy, and should be allowed to have effect according to its natural and obvious meaning. Schroder v. Crawford, 94 Ill. 357.

We think the law must be given such a construction as, without doing violence to its terms, will carry out its spirit, and accomplish the purpose set out in the title of the act, which is, " To provide for the licensing of, and against the evils arising from the sale of intoxicating liquors."

Section 9, under which this action is brought, is as follows : " Every husband, wife, * * * who shall be injured in person or property or means of support, * * * in consequence of the intoxication * * * of any person, shall have a right of action in his or her own name, severally or jointly, against any person or person who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons."

It is to be observed that the law does not say that the person injured shall have a right of action against the party selling or giving intoxicating liquors to the person becoming intoxicated, but it gives a right of action generally against any dram shop keeper who, by selling or giving intoxicating liquors, contributes to the intoxication of the person through whom the injury is caused. In this respect there is a marked difference between the section of the statute under consideration and section 6 of the same statute, which provides a penalty against one selling or giving intoxicating liquor to any minor or to any person in the habit of getting intoxicated, and under which section, upon an indictment for selling liquor to a minor, it was held that a sale to an adult with the knowledge of the saloon keeper that the liquor was to be drank by the minor, was not a violation of the statute. Siegel v. The People, 106 Ill. 89.

There is nothing, however, in the case just cited which

leads us to suppose, that had the language of section 6 been as broad as that of section 9 the Supreme Court would have held there was no liability. No question was raised as to a gift of liquor to the minor, and the point of the decision was, that the conviction was wrong because the defendant was tried and convicted for selling liquor to a minor, while the proofs showed only a sale to an adult. We do not think this case is of controlling force on the question now before us, because of the wide difference in the wording of the two sections of the statute.

It is true that in the case of Flynn v. Fogarty, 106 Ill. 263, Mr. Justice Mulkey speaking for the court, and having under consideration the section of the statute now before us, used this language: "To make out a case, under the statute, it was necessary for her (the widow) to satisfactorily establish, first, that the defendants sold or gave to the deceased intoxicating liquors." * * * A similar statement is made by Mr. Justice Magruder in McMahon et al. v. Sankey, 133 Ill. 641, but in neither of these cases was the question raised as to who bought and paid for the liquor which produced the intoxication, and hence the precise question we are considering was not before the court. Our attention has not been called to any decision by our own Supreme Court wherein this question was fairly involved, and we know of none.

In the case of Sibila v. Bahney, 34 Ohio St. 399, the court say: "Although the liquor was called for and paid for by another, yet it being designed to be drank by the person calling for it and Bahney, at the defendant's bar, and the defendant knowing that Bahney was there to drink the same, and furnishing it for that purpose, such act by the defendant would constitute a furnishing by him to Bahney."

In State v. Hubbard, 60 Iowa, 466, the defendant was convicted of the crime of disposing of intoxicating liquor to one Johnson, an intoxicated person. The proofs showed that whatever liquor Johnson drank in the saloon of the defendant, was upon the "treat" of one Andrews, and it

was contended that this was not a "disposing" of liquors
to Johnson. An instruction to this effect was refused by
the trial court, which ruling was sustained by the Supreme
Court.

In another Iowa case (Judge v. Jordan et al., 81 Iowa,
519, 46 N. W. Rep. 1077) a saloon keeper was sued for sell-
ing intoxicating liquor to plaintiff's husband. The evidence
showed that defendant's saloon was open at night while a
fire was raging near by; plaintiff's husband was assisting
at the fire. One Gage said to defendant Jordan, "Give the
fire department a round on me; I will pay for it." In com-
pliance with this, defendant and his bar keeper dealt out
intoxicating liquors, for which Gage afterward paid. Plaint-
iff's husband drank of this liquor and was afterward found
in an alley in a helpless state of intoxication. He was so
badly frozen as to necessitate the amputation of one of his
legs. The trial court charged the jury that if Jordan or
his bar keeper, acting upon the direction of Gage, furnished
Judge intoxicating liquors, or furnished it to others in his
saloon, from whom the plaintiff's husband obtained it,
then it was a selling to said Gage and plaintiff's husband;
*held*, that the instruction stated the law correctly as
applied to the issues in the case.

In Walton v. State, 62 Ala. 197, it was held that where
intoxicating liquors are sold to a third person with the
knowledge that a person of known intemperate habits is
to join in drinking it, and such intemperate person is
permitted to drink such liquor in the presence of the party
selling, he is guilty of the offense denounced by the statute.
11 Am. & Eng. Ency. of Law, 708.

It is true that the cases cited were decided under statutes
slightly different from ours, and yet we think a careful com-
parison will show that the Illinois statute is as broad and com-
prehensive in its terms as those of the States in which these
decisions were rendered. It can not be seriously contended
that the intoxication of plaintiff in error's husband was not
produced in whole or in part by intoxicating liquor sold or
given by defendants in error. Not sold or given directly

Johnson v. Gram.

to him, but to others for him, which we think is not only within the letter, but within the entire spirit of the act. Any other construction fritters away and renders valueless the remedy sought to be given by the act. The legislature must be supposed to have understood the language it used in the several sections of the dram shop law. Under the sixth section the sale or gift must be made to the minor or person in the habit of getting intoxicated, in order to create a liability. But not so in the ninth section. The language used is general, that the right of action shall exist against any person, who, by selling or giving intoxicating liquors shall have caused the intoxication. Manifestly the legislature had some purpose in using this language in the ninth section so different from that in the sixth section, and we think the object was to cover just such cases as the one now before us. What possible difference can it make to the defendants in error whether Johnson paid for the liquor he drank or it was paid for by others? The liquor was set out upon their bar for him to drink, and he drank it in their presence, they knowing the probable consequence would be that he would become intoxicated, as he did, which accord-ing to common observation is not an unusual result when a number of men in a saloon indulge in the practice of treating each other to intoxicating drinks. We are of the opinion that the sad results shown in the case at bar were within the purview of the legislature in the adoption of the dram shop law, and among the evils sought to be remedied by that act. Any other construction than that we place upon it would not accomplish the purpose which the framers of the law evidently intended.

Our conclusion is that the court erred in giving instruc-tions 8, 9, 10, 11 and 12 on the part of defendants in error, and in modifying instructions 1, 2 and 4 asked by plaintiff in error. Had the jury followed these instructions they must have found for the defendants in error, yet, neverthe-less, they gave plaintiff in error a small verdict. How far the jury may have been influenced in their assessment of damages by the misdirection of the court as to the law of the case we can not say, but, under the evidence, if plaintiff

was entitled to recover at all, she should have been awarded damages which would in some measure reasonably compensate her for the loss sustained. A verdict of $275 is, in our judgment, entirely inadequate.

The evidence shows that deceased was a very strong, robust man, weighing 180 pounds, five feet eight inches in height, and only thirty-eight years old. He earned from $1.50 to $3 per day accordingly as he worked with or without his team. He supported his family comfortably from his earnings and was paying for a home through a homestead loan association. By his untimely death plaintiff's means of support were entirely cut off, and it can not be said that the verdict rendered in this case does her substantial justice. We think the judgment should be reversed and the cause remanded to be tried by another jury under proper instructions as to the law of the case. Reversed and remanded.

WRIGHT, J.

I do not concur in the opinion of the majority of the court, because I think it a clear departure from the construction put upon the statute by the Supreme Court of our State.