H. H. LUNDY, Appellant, v. CITY OF AMES, Appellee.

**MUNICIPAL CORPORATIONS:** Torts—Defects or Obstructions in Streets—Dangerous Condition—Contributory Negligence Per Se. A pedestrian who attempts to pass over an abrupt decline, known to be dangerous, in a public street, in the belief that he can do so in safety, will be deemed guilty of negligence *per se, in the absence of any showing of acts of care on his part.* (See Book of Anno., Vol. 1, Sec. 5945, Anno. 266 et seq.)

Headnote 1: 28 Cyc. p. 1424.

*Appeal from Story District Court.*—H. E. FRY, Judge.

JUNE 21, 1926.

Action to recover damages for personal injury claimed to have been suffered by the plaintiff by reason of a fall upon an icy sidewalk in the defendant city. The court directed a verdict in behalf of the defendant, and the plaintiff appeals.—*Affirmed.*

*Lee & Garfield,* for appellant.

*J. Y. Luke,* for appellee.

FAVILLE, J.—The sidewalk in question runs north and south on the west side of one of the principal resident streets of appellee city. It appears that at one time the city fixed the grade for a sidewalk in front of a certain lot in said street, and the owner of said lot constructed a sidewalk in front of the same at the established grade. This grade was higher than that of the adja-

cent lot, and the sidewalk, which was constructed of brick, was made on a slope, at a drop of twenty-six feet in one hundred. The evidence shows that the ordinary slope in a sidewalk is a drop of seven feet in one hundred. The sloping portion of the walk is about four feet in length.

About a week before the accident, there had been a fall of snow, of about two inches. It appears that the snow had thawed and frozen, and that, upon the day of the accident in question, the slope referred to was more or less covered with ice from one to two inches thick, and that a portion of it at least was rough and uneven, and that children had been sliding on the ice down this slope. Appellant was proceeding northward on said sidewalk on the afternoon of January 26, 1924, between five and six o'clock, when he slipped and fell upon the sloping portion of said sidewalk, and suffered the physical injury which is the basis of this action.

Appellant as a witness testified that he was in the habit of passing over the said sidewalk nearly every day, and that he had been over the same sidewalk four times on the day previous; that it was on the direct route from his home to the business part of town. He testified that after the fall of snow the slope was not cleaned off, and that the ice on the sidewalk was from one to two inches thick; that the ice was uneven, and was rough and slippery on the slope, and had been in that shape for about a week; that the children had been sliding on the slope, and the sled marks could be seen; that, at the time of the injury, he was walking at an ordinary gait. On cross-examination, he first testified as follows:

"Q. You have seen this slope before? A. Yes, sir. Q. You had been over it at least four times the day before? A. Yes, sir. Q. You knew it was dangerous? A. It has been dangerous all the time. Q. When you went over it the day before, on January 25th, you considered this piece of sidewalk dangerous? A. Yes, sir. Q. What was you thinking about when you were going over that afternoon? A. I don't know that I thought about anything but getting home to get my supper. Q. You wasn't thinking about this sidewalk? A. No, sir. Q. All you was thinking about was getting home to get your supper? A. Yes, sir."

At the close of appellant's testimony, appellee moved for

a directed verdict. Before a ruling on the motion was entered, appellant's attorney asked leave to open the case for the introduction of further testimony, which was granted, and thereupon appellant was called as a witness, and testified as follows:

"Q. Mr. Lundy, as you were walking home that evening, when you came to the north end of the Bowman sidewalk, did you realize that you had come to the end of that sidewalk, and had come to this drop in the sidewalk? * * * A. Well, I walked home that night on that 26th of January, 1924,—I walked home,—I walked that way that I thought I could get safe over there without—and not get hurt or anything. Q. When you came to this slope in the sidewalk, in this fall in the sidewalk, at the north end of the Bowman lot, did you realize where you had got to— did you know where you were? A. Yes, sir. * * * Q. What did you think about being able to pass over this place, this icy slope, that we have been talking about in this case, at the time and just before the time you first stepped on it? * * * A. I thought I could get over it safe. Q. Did you know how slippery that slope was that night, at the time you first stepped on it, on this slope? A. No, sir. Q. You had passed over this slope before, had you? A. Yes, sir. Q. And you never had fallen there before on the ice? A. No, sir."

On further cross-examination, the witness, among other things, testified:

"Q. You told us this morning that you knew this sidewalk was dangerous? A. Yes, sir. Q. And that you considered it dangerous? A. Yes, sir. Q. And that you was walking along not thinking about the sidewalk? A. Yes, sir. Q. That's what you told us this morning? A. Yes, sir, I was walking there—I just—I wasn't thinking so much about it. I thought I could get across safe. Q. You didn't tell us anything this morning about you thinking you could get across safe, did you? A. No, sir."

Notwithstanding any inconsistency in the evidence, it must be construed as a whole in the light most favorable to appellant, for the purposes under consideration. The question arises as to whether or not the court was justified in directing a verdict in behalf of appellee on the ground that appellant, as a matter of law, was guilty of contributory negligence. We have, then, the situation where appellant approached a familiar condition in a sidewalk which he knew was dangerous, and regarding which he

says he thought he "could get over it safe." He thereupon passed upon the dangerous place, and slipped, and received the injury of which he complains. The important question at this point is not so much whether or not appellant *thought* he could pass safely, but what, as a matter of fact, he *did* in attempting to pass safely. It is a matter of common knowledge that, in attempting to pass safely down a steep decline that is covered with ice, some physical act is required, in addition to the mental act of thinking one can pass safely. What did appellant do, in order to attempt to pass down the known dangerous slippery decline in safety? He testified as follows:

"Q. Mr. Lundy, up to the time you fell, how were you walking? A. An ordinary walk. Q. Were you walking faster or slower than ordinary? A. Just ordinary. Q. An ordinary gait? A. Yes, sir."

So we have a situation where a party approaches a well known and familiar place in a sidewalk, where there is an abrupt and steep decline which he knows to be covered with ice, and to be in a slippery and dangerous condition. Even though we waive any question of inconsistency in his testimony, the fact still remains that appellant, under his own testimony, used no precaution, exercised no care, and did no act or thing on his part to avoid the injury. He pursued the even tenor of his way, at an ordinary gait, down a steep decline of which he claims he was fully cognizant, and which he realized was covered with ice and in a dangerous condition. He was guilty of contributory negligence, under such circumstances. If we adopt his statement that he did think of the place, and thought he could cross it in safety, the fact still remains that he offered no proof as to how he attempted to cross it in safety, except that he went at an ordinary walk. To attempt to pass down such an abrupt, slippery place in an ordinary walk, and at an ordinary gait, is not the exercise of due care. It is true, it does not necessarily follow, under all circumstances, that a person attempting to pass over a known dangerous place in a sidewalk is guilty of contributory negligence in attempting to so pass, if the party believes that he can pass over in safety, and does in fact use reasonable and ordinary care in attempting to so pass. We have often recognized the rule that the mere fact of attempting to pass over a known dangerous place in a sidewalk does not of itself constitute

contributory negligence, where the party believes that he can effectuate the passage in safety; but in all such cases, in order for a plaintiff to be free from contributory negligence, it must appear in the record that he used due care on his part, under the circumstances then surrounding him. Ordinarily, the question of contributory negligence is for the jury; but where it is shown by the record that, as a matter of law, a plaintiff has been guilty of contributory negligence, a verdict should be directed against him. Such is the repeated pronouncement of this court. What did the plaintiff do, in attempting to cross the known place of danger which he believed he could cross in safety? How did he proceed? What acts did he perform? Was he free from contributory negligence? We think the record affirmatively shows that appellant failed to exercise such care as a person of ordinary care and prudence would have exercised under the circumstances as known to appellant at the time.

We therefore reach the conclusion that the court did not err in sustaining appellee's motion for a directed verdict on the ground that appellant was guilty of contributory negligence. As bearing somewhat upon the question herein discussed, see *Cratty v. City of Oskaloosa*, 191 Iowa 282; *Marshall v. City of Belle Plaine*, 106 Iowa 508; *Nichols v. Incorporated Town of Laurens*, 96 Iowa 388; *Graham v. Town of Oxford*, 105 Iowa 705; *Gibson v. City of Denison*, 153 Iowa 320.

It is unnecessary that we discuss other grounds of the motion for a directed verdict.

The judgment must be, and it is,—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.