STATE OF IOWA, Appellee, v. RAY MCCOOK, Appellant.

630

SEPTEMBER 28, 1928.

*Walter M. Davis* and *W. F. Murphy*, for appellant.

*John Fletcher*, Attorney-general, and *C. B. Russell*, for appellee.

EVANS, J.—The alleged larceny occurred on February 3, 1926. Both Lorence and the defendant lived about eighteen miles northeast of Iowa City. According to the story of Lorence, the defendant came to his home as he was starting with horse and buggy to the town of Solon. On the way, they stopped at the Worrell home, to visit their friend George Worrell, and they found the home empty. The clover seed was contained in four sacks in a room upstairs, and was by them carried away, and taken the same night to Iowa City, where it was sold on the 25th day of February by an auctioneer.

According to the story of this defendant, Lorence came to his home on the evening in question, bringing with him two sacks of clover seed which he was expecting to sell. The father of McCook had approximately an equal amount of clover seed for the same purpose. The two men put their properties together, and proceeded to Iowa City in the spring wagon of this defendant, drawn by a span of horses, rather than by one horse, and delivered the seed to an auctioneer, for the purpose of sale. This presents the divergence of statements between the two defendants. The evidence was quite abundant to sustain the verdict of guilty. Errors are assigned as a ground for reversal, and we proceed to their consideration.

I. The defendant was a witness in his own behalf. His counsel put to him this question:

"Q. Along in February or March or January of 1926, do you recall having a conversation with George Lorence with reference to having some clover seed that you wanted to sell?"

An objection to this question was sustained, on the ground that it was incompetent and hearsay. Error is assigned on the ruling. It is urged in argument that Lorence had testified to a conversation with the witness at the time inquired about, and that the defendant, therefore, had a right to testify to the same conversation. The record does not quite sustain the argument. The question was somewhat preliminary in form, and the objection, for that reason, was somewhat premature. The witness had not been asked to state the conversation. The objection carried the assumption that the conversation had been called for. The objection, therefore, was not well taken. But the ruling was clearly without prejudice. The witness was permitted to testify to the circumstances of his meeting Lorence on the evening in question. Following this testimony, the following question was put to him:

"What, if anything, did he say he brought this clover seed down to the home of your father for?"

Objection was made and sustained to this question on the same ground as before. This objection was properly sustained. This was not responsive to any testimony given by Lorence.

Lorence did not testify that he was at the home of the defendant at all on that evening. On the contrary, he testified that the defendant came to his home, and that they started their trip from there. The witness was permitted to testify to all the facts and circumstances of that night as he claimed them to be. He was not precluded from contradicting the testimony of Lorence at any point. He laid no foundation in the cross-examination of Lorence for impeaching testimony. Except for the purpose of impeachment, he had no right to testify to alleged statements made by Lorence, unless his testimony was contradictory to the testimony of Lorence. There was no error at this point.

II. Kennard was a witness for the defendant. He was the auctioneer who sold the clover seed for the defendant at Iowa City. Defendant's counsel put to him the following question:

"Q. Do you remember the occasion of Ray McCook and George Lorence, being at this feed yard on or about February 24th, 1926, when they had some clover seed for sale?"

Objection was made and sustained to this question because the witness had previously testified that he had not known George Lorence until sometime after such event. The witness had testified that he first knew who George Lorence was, sometime after the date in question. This by no means precluded his recognizing him later as the person who was with McCook on the night in question. Whether the witness would have so testified, is not made to appear in the record. It was within the discretion of the court to sustain the objection. In view of the objection, it was incumbent on the defendant to so frame his question as to ascertain whether the witness did recognize him as the person who was with McCook on that night. No effort was made by the defendant to meet the objection. Nor was any statement made to the court as to what would be the testimony of the witness in that regard.

The assignment of error, therefore, lacks foundation in the record.

III. The defendant complains of Instruction No. 11. This was as follows:

"A witness may be impeached by showing that, in the community where he resides, his general moral character is bad, or that he has made statements out of court at variance with and contradictory to his testimony on the witness stand. An attempt has been made to impeach some of the witnesses in this case. If you find that any witness in this case has been successfully impeached, then you are at liberty to disregard his testimony entirely, but you are not bound to do so. If you find that any witness has sworn falsely as to any material fact in the case, then you may disregard the testimony of such witness in its entirety, but you are not bound to do so. You are the sole judges of the credibility of the witnesses and of the facts in the case."

It appears that impeaching evidence had been introduced by the State, as against some of the defendant's witnesses. It is argued that this instruction on the subject of impeachment unduly discredited the witnesses. We think that the rule sought to be set forth in this instruction was too loosely put. False swearing must be *willful*, in order to come under the ban. It furnished no guide whatever to the jury to enable it to perform its duty of determining whether they should give consideration to the testimony of the impeached witnesses, or whether they should refuse such consideration. The discretion exercised by the jury in such a case is not an arbitrary one. The testimony of an impeached witness may be reasonable and credible, and the jury may actually believe it. This belief may result from corroboration of circumstances, or other oral evidence. In such a case, the testimony should not be disregarded simply because the witness was impeached. The form of the instruction, we think, carried the impression to the jury that an impeachment of the witness *ipso facto* put his testimony under ban, and that the jury had the arbitrary right to disregard it, regardless of its credibility in the light of all the circumstances appearing in evidence. The jury was under the legal duty to determine the credibility of the evidence or want of it, as a basis for exercising its discretion. We are constrained to hold, therefore, that the instruction was prejudicial.

IV. Defendant assigns error upon Instruction No. 12, which was as follows:

"You are told that, in this case, the court made an order excluding the witnesses, both for the State and the defendant, from the court room until after they had testified. It appears that the witnesses Joe E. Kennard and Daniel Sherfey were in the court room before they had testified, and heard portions of the testimony of the defendant while he was on the stand. You are instructed that the fact that they heard portions of the defendant's testimony before they themselves testified may be considered by you in determining the weight you will give the testimony of Kennard and Sherfey in this case."

The complaint here is that the statement of fact contained therein does not accord with the record. The witness Kennard was for the defense, and the witness Sherfey was for the State. The witness Kennard was called, in the first instance, and examined and excused. On the following day, he was recalled by the defendant for further examination. After his examination the first day, the witness doubtless innocently remained in the court room, not knowing that he was to be recalled. This is the version of facts set forth by defendant. The complaint is that the court assumed that the witness had been in the court room and had heard the testimony of the defendant before he testified the first time; whereas this was true only as applied to his recall. The record before us discloses that the defendant was not called as a witness until Kennard had testified the first time. The effect of the court's instruction was to discredit all the testimony of Kennard for the assumed reason that he had been in the court room and heard the testimony of the defendant. The fact thus assumed is not sustained by the record. We cannot say that the error of the court in that respect was without prejudice.

For the reasons indicated, the judgment below must be—
*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.