J. O. BURKE, Appellee, v. TOWN OF LAWTON, Appellant.

FEBRUARY 5, 1929.

*Fred H. Free*, for appellant.

*C. M. Walter*, for appellee.

FAVILLE, J.—I. The appellant is a town of about 300 inhabitants. Appellee is a man approximately 70 years of age. He was employed by a lumber company at the work of unloading tile.  On the 18th day of December, 1926, he was returning from his place of employment to his home, when he passed over the sidewalk in question, and slipped and fell, breaking the femur bone of one leg. Appellant moved for a directed verdict, which motion was overruled; and it is urged on appeal that the court erred in not sustaining said motion on

the ground that the appellee was guilty of contributory negligence. This is the important question in the case. The testimony is set out by question and answer *in extenso* in the abstract. We select excerpts from the appellee's testimony sufficient for the purpose of passing upon the question presented. The appellee, as a witness in his own behalf, testified with regard to the condition of the walk where the accident took place, which was in front of a property known as the Cathcart building. He was asked to describe the condition of said walk at the time of the injury, and testified as follows:

"A. Had snow on it that had melted, and it had frozen, and it was icy; it was icy,—had not been cleaned off. * * * Q. State, Mr. Burke, how long that condition had been there, as far as you know? A. Well, as far as I know, I think it was about two weeks. * * * A. We had one good fair-sized snowstorm, five or six inches, I should judge. Q. When did that come? A. That was along somewhere around the 7th, 8th, or 10th of December, —I couldn't say just the date,—I don't—Q. Were you down and around the town of Lawton in front of the Cathcart property after that snowfall? A. Yes, sir. Q. Was that snow removed from in front of the Cathcart property? A. I think not. Q. What happened to that snow? A. It froze. Q. Just describe the condition it took, or what fell there? A. It would thaw and freeze, and thaw and freeze, and people would travel along there, and it was rough. * * * Q. State whether or not that condition continued from the snowstorm you have mentioned, down to the time of your injury? A. Yes, sir."

The witness testified that, after he left the lumber yard, he came down an alley, until he arrived at the sidewalk near the corner of the Cathcart building. He then testified:

"Q. I say, when you got to the corner of the Cathcart building, what did you do? A. Why, I turned south. Q. State what the condition of that walk was, in front of the Cathcart building, at that time, if you know? A. Well, I couldn't say; I remember it was very icy. Q. Describe the ice, as to whether it was rough, smooth, or all rough, or how deep it was, or the condition of it. A. I couldn't say as to the depth of it, but it was rough; it had been tramped there, and it was tracked up, and it had frozen again. Q. State, if you know, how long that ice had

588

been there in front of the Cathcart building? A. At least for a week or two. Q. State whether or not you recall any snow in Lawton prior to this date when you were injured,—do you recall any snowstorms in Lawton? A. Yes, sir. Q. State to the jury when it was, to the best of your recollection. A. As near as I can say, it was around somewhere from the 7th to the 10th. Q. Of what months? A. Of December. Q. What kind of a snowstorm was it? A. Well, it started with sleet, and ended with snow,—started with rain and sleet. Q. How is that? A. It started with rain and sleet, and ended with snow. Q. You think that was around the 7th to the 10th of December? A. Somewhere around there. Q. How much snow came at that time? A. Well, I couldn't say exactly, but I should judge somewhere in the neighborhood of five or six inches. Q. State whether or not that snow, if you know, was removed from in front of the Cathcart building. A. Not that I know of. Q. State whether or not you were down town, and how often, to the best of your recollection, during the first part December of 1926, in the town of Lawton. A. About every day. Q. On these occasions, state whether or not you observed the condition of the walk at the Cathcart building. A. Why, I didn't pay any particular attention to it. Q. Well, did you observe the condition? A. I noticed there was always snow and ice and stuff there. Q. Did you observe the condition after this snow fell, between the 8th or 10th of December? A. I did. Q. What was that condition? A. That was just left as it had fallen. Q. State whether or not that condition existed, the condition down to the date of the injury. A. How is that? Q. I say, state whether or not that condition of snow and ice existed and continued down to the date of the injury. A. I think it did. Q. When you reached the corner of the Cathcart building, what would be your ordinary and most convenient route to your home? A. Go south to the corner, and then go east. * * * Q. You live up this street to the east from that place? A. Yes, sir, I do. Q. You had been over that walk there in front of Cathcart's before? A. Yes, sir. Q. Why did you go home that way on that day? A. Because I would have to cross the street right there in the middle of the block, and the cars going both ways, here it would not be as safe as it would be to go down the walk. * *.* Q. Is that the way you were headed for home?

A. Yes, sir, that is the way I was headed for home. Q. State whether or not you thought, at the time you were crossing this ice, you could cross it in safety. A. I thought I could cross it all right.. Q. How were you dressed, at the time you crossed in front of the Cathcart building, with reference to what was on your feet? A. I had shoes and overshoes. Q. Rubber bottom overshoes? A. Yes, sir. Q. Smooth or rough bottoms? A. How is that? Q: Were they smooth or rough bottoms? A. Why, it was rough. Q. I mean the bottom of your overshoes. A: Well, they were rough. Q. How did you proceed across the walk there in front of the Cathcart building? A. I walked slow, and looked out, trying to get across without falling. Q. What kind of steps did you take, if you remember? A. Short and quick. Q. Did you watch where you were going? A. Yes, sir. Q. Did you continue straight across in front of the Cathcart building in a straight line, or did you vary from a straight line? A. I varied a little. * * * Q. Why did you get out, as you say, like that? A. Because it was rougher,—it looked rougher,—and some better for me to walk on; in the center here, it had got packed down until it was slick and smooth. Q. You walked out around a little, to get on the rough ice? A. Yes, sir. Q. What happened after you stepped out of the beaten path onto the rougher ice to the side of it? A. I slipped and fell. Q. Where were you, with reference to the front of the Cathcart building, when you fell? A. I was right in front of it: that is, right in front of the south half of it. * * * Q. So you were not paying much attention to this walk in front of the Cathcart place when you came on it that evening? A. Why, I knew,— I had crossed it a number of times, and I never thought anything about getting my neck broke on it. Q. You didn't think it was dangerous, did you? A. I didn't think it was as dangerous as that. * * * Q: When had you gone over that walk before? A. In the forenoon. Q. What time? A. Oh, around 10 o'clock or 10:30,—somewhere along there.''

It would incumber this opinion to too great an extent to attempt to set out all of the testimony of the appellee. The foregoing is sufficient. Upon this record, it is strenuously contended by the appellant that the appellee was guilty of contributory negligence. As a general rule, the question of contributory negligence is one for the jury. Appellant relies for

a reversal chiefly upon two decisions of this court: *Lundy v. City of Ames*, 202 Iowa 100, and *Cratty v. City of Oskaloosa*, 191 Iowa 282. In the *Lundy* case, it appeared that the plaintiff approached a familiar condition in a sidewalk, where there was an icy slope which he knew was dangerous, and which he said he thought he could get over safely. His evidence disclosed that, at the time, he was walking at an ordinary gait; that he was not thinking about the sidewalk at the time; and that he did no act or thing to avoid injury on the slippery and slanting place which he knew he was about to cross. There was no proof as to the manner in which he attempted to cross it, except that he went at an ordinary walk. In the instant case, the evidence is that the appellee had on overshoes, with rough bottoms on them, and that he walked slowly and "looked out, trying to get across without falling;" that he took short, quick steps, and watched where he was going; that he selected the place on the sidewalk that appeared to him to be the safest place on which to travel. It is not suggested by the appellant, nor do we find in the record any evidence of any act of omission or commission on the part of the appellee that can be said, as a matter of law, to have constituted contributory negligence on his part. He was properly upon the sidewalk at the place in question, in the course of his way home from his place of employment. It was early in the evening. He knew that the sidewalk was slippery. He thought he could pass safely. He attempted to avoid what he regarded as the more slippery place upon the walk. He walked slowly, and with short, quick steps, in passing over the slippery surface. Appellant has failed to suggest anything that the appellee should have done to exercise greater care, or what thing, if any, he should have omitted that would have constituted care on his part. Under the facts and circumstances, it was for the jury to determine whether or not the appellee was exercising the care and caution that an ordinarily prudent man would exercise, under the circumstances. The case is clearly distinguishable in its facts from the *Lundy* case.

In the *Cratty* case, it appeared that the plaintiff knew of the defective condition of the walk, but, at the time of the injury, was neither looking nor thinking about the condition. Half of the walk was in a sound condition and suitable for use; half was dangerous. It was safe and equally convenient for the

plaintiff in that case to have walked upon the side of the walk which he knew was safe. The facts of the *Lundy* case and those of the *Cratty* case are clearly distinguishable from the instant case. We are disposed to the view that the court did not err in overruling appellant's motion for a directed verdict and submitting the question of contributory negligence to the jury for their determination.

Whether or not the appellant was negligent was also a question for the jury, under the record. See *Tollackson v. City of Eagle Grove*, 203 Iowa 696, and cases therein cited.

II. It is argued by the appellant that the court erred in instructing the jury with regard to the degree of care required of a municipality in respect to removing snow and ice from sidewalks, and it is contended that an instruction requested by the appellant should have been given. The requested instruction was substantially embodied in an instruction that was given by the court, and the instruction as given fully explained to the jury the duty resting upon a municipality in regard to the care it must exercise in respect to removing snow and ice from the sidewalks. The instruction given was as favorable to the appellant as the requested instruction, if not more so.

III. Appellant complains of the refusal of the court to give an instruction to the effect that, if the jury found from a consideration of all the evidence that any witness had testified falsely concerning material facts, the jury were at liberty to disregard the entire testimony of such witness, except as he might be corroborated by other credible witnesses. The requested instruction omitted the element that the false testimony of the witness must have been given willfully, in order to be under the ban. In any event, the giving of an instruction on this subject-matter rests within the discretion of the trial court, and we do not reverse for the failure of the trial court to instruct on this subject-matter, even though the request for such instruction is in a proper form, where, as in this case, other instructions sufficiently advised the jury as to the credibility of the witnesses. As bearing on the question, see *State v. Weber*, 204 Iowa 137; *State v. McCook*, 206 Iowa 629.

IV. Appellant complains of the refusal of the court to

give an instruction requested by the appellant with regard to ordinary care and diligence on the part of the city or the owner of the property adjacent to said sidewalk, to remove the sleet or ice therefrom. The instruction given by the court embodied the thought of the requested instruction. Appellant complains, however, because the court embodied in the instruction given the following clause:

"You are further instructed that, when cold follows, causing a film of ice upon the sidewalk which is practically impossible to remove, the municipality. may, without being guilty of negligence, wait for a change of temperature, to remedy the condition."

This portion of the instruction was copied bodily from the opinion of this court in *Beirness v. City of Missouri Valley*, 162 Iowa 720, 723. It was not any portion of an instruction that was under consideration by this court in said case, but was a mere general statement, in the course of the argument in the opinion. It, however, is a correct statement of the law; and while we do not approve of trial courts' using literal quotations from the opinions of this or any other court in instructions to the jury, yet, where the same are correct statements of the law, no error can be predicated thereon.

V. Complaint is made of the admission in evidence of the testimony of a witness to the effect that, shortly after the accident, a certain party sprinkled salt upon the walk in question. This evidence was admitted in what may properly be termed rather an incidental manner. Certain witnesses for the appellant testified with regard to the condition of the walk after the accident, their testimony being in conflict with the testimony of the appellee and his witness. It was shown that the condition of the walk as to ice had changed, by reason of the fact that salt had been placed on the walk after the accident, which changed the condition. There was no reversible error at this point.

VI. It is urged that the verdict is the result of passion and prejudice, and is excessive. The appellee suffered a serious injury. The verdict was for $2,989. In answer to special inter-

 rogatories, it appears that the verdict was found by the jury solely for nursing and care, incurred and prospective, and for pain and inconvenience of movement. No award was made by the jury for loss or impairment of earning capacity. There is evidence tending to show that the appellee suffered pain from the injury, incurred expenses for care and nursing which were proven to the jury, and that his injuries are of a permanent character. We are not disposed to interfere with the amount of the verdict, under the record in this case. It does not indicate passion or prejudice upon the part of the jury.

We find no error requiring interference on our part, and the judgment is—*Affirmed.*

ALBERT, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.