H. M. ILTIS, doing business as H. M. ILTIS LUMBER COMPANY, Appellee, v. OTTO H. GENTILLY et ux., Appellees; POLK COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant.

No. 46403.

APRIL 4, 1944.

D. D. Staples, of Des Moines, for defendant appellant.

Stipp, Perry, Bannister & Starzinger, of Des Moines, for plaintiff appellee.

Carl S. Missildine, of Des Moines, for defendant appellees.

GARFIELD, J.— Defendant appellees, Gentilly and wife, having purchased a vacant lot in Des Moines, engaged one Rush to build a home on it at the contract price of $5,225. Defendant appellant, Polk County Federal Savings and Loan Association, agreed to loan $5,100 on the property and defendant appellees executed their note and mortgage for that amount. After appellant loan association had disbursed from the proceeds of the loan $3,000 to the principal contractor and $1,067 to three subcontractors, Rush abandoned the job. Appellant then paid defendant appellees the balance of the loan to enable them to complete construction. This they did at a cost of $435, leaving in their hands $557.

Plaintiff appellee, Iltis Lumber Company, filed its mechanic's lien for $1,842 for materials furnished the contractor. Five other mechanics' liens were filed for a total of about $500. Plaintiff appellee then brought this suit to foreclose its lien against the owners, the mortgagee, and the other lien claimants. Following a trial, the mechanics' liens were all established as prior to the mortgage. No complaint is now made of that part of the decree.

Appellees (owners) contended throughout that appellant (loan association) orally agreed to disburse the proceeds of the loan only when the contractor furnished it receipted bills from subcontractors who furnished labor or material for the house; that appellant failed to procure such receipted bills and therefore is responsible for the loss due to the contractor's default. The lower court held with appellees on this contention and rendered judgment against appellant for the amount of the liens, less the $557 still in appellees' hands from the proceeds of the loan. It

is this part of the decree, under which appellant is required to disburse about $1,800 more than the amount of its note and mortgage, that is assailed.

I. The controlling question is one of fact. Giving to the finding of the trial court the weight to which it is entitled, we reach the same conclusion. Shay, the salesman who sold the lot, referred appellees to the contractor and to appellant loan association. The arrangement for the loan was made orally between appellees and Mr. Ross, appellant's managing officer. Shay was also present. These four all agree that Mr. Gentilly asked Ross about requiring the contractor to furnish a bond. Appellees testified that Ross told them he was well acquainted with Rush, had dealt with him frequently, Rush had built other houses they had financed, had always done all right and there was no need of incurring expense for a bond premium. Ross testified he told Gentillys it was for them to decide whether to require a bond from Rush. Shay's version is that Ross told appellees "this particular contractor had never been bonded on any of his other jobs."

These four witnesses also agree that appellant was to disburse the proceeds of the loan on orders signed by the owners at different stages of construction. Appellant made three payments to the contractor totaling, as stated, $3,000, and, about the time Rush abandoned the job, three payments to subcontractors totaling $1,067. One of the Gentillys signed an order for each of these payments. It appears, however, that before each order was signed Mr. or Mrs. Gentilly asked Mr. Ross if it was all right to sign the order and was assured by him it was. The orders, on forms supplied by appellant, were presented to appellees by Rush or the subcontractors to whom the payments were made.

Mr. and Mrs. Gentilly testified that Ross said in this same conversation the loan association would see that the contractor furnished it receipted bills before it disbursed the proceeds of the loan; upon the final payment these receipted bills would be turned over to appellees; this was part of the service rendered by appellant for which appellees were paying. Ross denied this testimony and contended appellant was not equipped to see that the contractor properly applied the proceeds of the loan. Shay's

testimony is somewhat indefinite, although he did testify nothing was said about appellant's securing receipted bills. He also testified Ross said in this conversation that before the contractor received the final payment he would furnish lien waivers or receipts from those who furnished labor and material on the job.

Appellees paid appellant $128 which they contend was for the service to be rendered by appellant. Appellant maintains this was to pay a two per cent commission and the expense of making the loan.

In determining the credibility of the witnesses on the vital question now in dispute, the trial court seems to have considered the testimony of Ross and of appellees on the matter of whether construction had commenced before appellant took its mortgage. Ross testified emphatically that he inspected the premises just after recording the mortgage, and that no work had then been done. Appellees both testified the cellar had then been excavated and much of the foundation completed. It was proven conclusively by markings on a calendar and a paper found in the "cornerstone" built into the house that appellees told the truth in this respect and Mr. Ross did not. Apparently it is largely on the strength of this written evidence that appellant now concedes the correctness of so much of the decree as gives priority to the mechanics' liens over the mortgage.

Where it appears from all the evidence that a witness willfully testifies falsely to some material fact, his testimony as to other matters may be disregarded except insofar as corroborated by other credible evidence. Burke v. Town of Lawton, 207 Iowa 585, 591, 223 N. W. 397; State v. McCook, 206 Iowa 629, 633, 221 N. W. 59; Doyle v. Burns, 123 Iowa 488, 504, 99 N. W. 195; Judge v. Jordan, 81 Iowa 519, 524, 46 N. W. 1077; 70 C. J. 783, section 969; 28 R. C. L. 659, section 244.

Perhaps it should be stated, as having a bearing on the equities of the case, that appellee lumber company notified appellant when but $2,000 of the loan had been disbursed that the contractor was then owing it $800 for materials furnished on this job. Appellees knew nothing of this until three to four months later, about the time Rush abandoned the contract. So far as shown, after receiving this information appellant did nothing to see that plaintiff appellee's bill was paid.

■ II.   One of the numerous provisions of the mortgage is:

"The mortgagors agree to complete any improvements now or hereafter under construction, not to construct any new improvements or additions to or structural changes in the present improvements on said premises or remove or permit to be removed from said premises any buildings, fixtures or improvements of any kind without the written consent of the Association and that no improvements or fixtures of any kind will be installed subject to any vendor's lien or other lien and should any be so installed the lien of this mortgage shall be prior and superior thereto."

Appellant contends this provision "should be given greater credence than the parol testimony of the Appellees attempting to vary or abrogate the same."   This contention seems not to have been made below.   Therefore, we would be justified in not considering it.   In re Estate of Sarbaugh, 231 Iowa 320, 1 N. W. 2d 105; New Amsterdam Cas. Co. v. Bookhart, 212 Iowa 994, 1001, 235 N. W. 74, 76 A. L. R. 897; 4 C. J. S. 434, section 229; 3 Am. Jur. 25, section 246; id. 59, section 287.

■ However, we see no conflict between the above provision and the oral agreement upon which appellees rely.   That agreement obligated appellant to perform a service in disbursing the proceeds of the loan in no way inconsistent with the terms of the mortgage.   The oral agreement was a purely collateral one, complete in itself, distinct from and independent of the mortgage, dealing with a matter concerning which the mortgage is silent. The parol-evidence rule does not apply in such a case.   Andrew v. Brooks, 219 Iowa 134, 257 N. W. 315; In re Estate of Simplot, 215 Iowa 578, 581, 246 N. W. 396; Cox v. Fleisher Constr. Co., 208 Iowa 458, 463, 223 N. W. 521; Stoner v. Stehm, 200 Iowa 809, 814, 202 N. W. 530; 32 C. J. S. 970, section 997; id. 996, section 1003i; 20 Am. Jur. 992, section 1140; 20 Iowa L. Rev. 713, 733.

The mere construction of the house without appellant's written consent was probably a violation of the quoted provision of the mortgage.   But appellant makes no complaint that the house was constructed.   Clearly, it waived that part of the mortgage provision.   It surely had no thought of loaning $5,100

on a vacant lot in the outskirts of Des Moines. The very purpose of the loan was to enable appellees to construct their home. Appellant orally assumed the burden of seeing that the contractor paid laborers and materialmen. Had it discharged that burden, no mechanics' liens could have·been established. Appellant is in no position, by reason of the quoted provision, to claim that appellees are liable for a loss occasioned by its own breach of duty.—Affirmed.

All JUSTICES concur.