### CASSIDY v CINCINNATI (City)

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5788.   Decided June 10, 1940.

Richard Remke and Carl Phares, Cincinnati, for appellant.

John D. Ellis and J. B. Grause, Jr., Cincinnati, for appellee.

## OPINION

By ROSS, J.

The plaintiff brought an action against the city of Cincinnati to recover for injuries received by her when she stepped into a depression left by the city when a new sidewalk was constructed on Torrence Parkway in such city.

At the conclusion of the evidence of defendant, the court instructed a verdict for the city.

In the bill of exceptions appears the court's statement to the jury:

"There is no complaint of any structural defect of the streets, except there is the complaint that at this particular point where Miss Cassidy says she fell the grading of the two and a half foot strip outside of the sidewalk space was five or six inches below the grading of the concrete sidewalk, the five foot strip, and below the grading at the driveway into the sidewalk. Miss Cassidy came down the outer edge of the ten foot strip that is set aside for sidewalk, and continued on the outer side, and walked over this driveway, and she said she put her foot down, and she says she fell. Now she knew all about the situation, and the law is that where one knows all about the situation and takes an unsafe course when there is a perfectly safe way to go, that the city is not liable; that that would be their own unfortunate fault."

It would appear, therefore, that the court considered that the plaintiff's injuries were occasioned by her own negligence.

The evidence introduced by the plaintiff developed that Torrence parkway is a new street, whose construction, including sidewalks, was completed in the late summer of 1938. This parkway extends westwardly from Grandin road. One block west of Grandin road, Herrick avenue extends from the parkway southwardly. West of Herrick avenue, the thoroughfare divides into two streets—the parkway extending on westwardly, and Torrence avenue extending from this intersection a little to the southwest. The plaintiff lived on the south side of Torrence avenue, three doors west of Herrick avenue.

On November 24, 1938, the plaintiff, after attending church on Grandin road, proceeded westwardly along the south sidewalk of Torrence parkway. She intended to cross Herrick avenue to Torrence avenue and thence reach her home on the same side of the street on which she was proceeding.

The sidewalk on the south side of Torrence parkway, at its intersection with Grandin road, is five feet in width. Some fifty feet east of the east line of Herrick avenue, this width is increased to 9 feet, 11 inches, first, by, what is styled in evidence, a "driveway apron" on the south next adjacent to the property lines, and 2 feet 11 inches to the north along the curb, this strip being termed a driveway ramp. This widened area of the sidewalk extended in front of a vacant lot, which the city claimed was ultimately to be used as a filling station. As an accommodation to the owner, the ramp and apron were installed by the city on city property in order to afford easy access to the property, when it was ultimately used as a filling station.

It appears from the evidence and the exhibits that while the ramp sloped down to the street level, the apron was upon a level with the sidewalk proper, and was only distinguished therefrom by an expansive crack running the full length of the apron.

Some five feet from the sidewalk on Herrick avenue the apron terminated and a space some five feet by two was left open, filled with rough dirt. There was a drop of six inches from the level of the sidewalk and apron to the bottom of this vacant space in the apron.

There was nothing to indicate that the apron was not as available for

pedestrian traffic as the sidewalk. The effect of the entire situation was to cause this 9 foot, 11 inch sidewalk to suddenly narrow 2 feet, the contracted area being a hole some five feet long by two feet wide, and six inches deep.

Some snow fell upon this area in the morning of the day upon which the plaintiff was injured. While she was at church more snow fell. It is in evidence that considerable wind prevailed during the entire period. The hole was filled with snow causing all of the area, both sidewalk and hole, to appear level. It was impossible to tell just where the apron stopped and the hole commenced.

The plaintiff passed down the sidewalk, and not being able to discern definitely the exact location of the hole misjudged its location, stepped into it, fell and was severely injured. The plaintiff was, at the time of the trial in the Common Pleas Court, sixty-two years of age. She was familiar with the sidewalk, the apron and the hole. She saw the improvement under construction and when completed, and it certainly may be presumed that she would not have intentionally done that which could only result in her injury. She manifestly did not intend to step in the hole. From the standpoint of fixing liability upon the city, this case presented a situation covered by the rule of liability set out in **Village of Mineral City v Gilbow et, 81 Oh St 263.** It presents the same situation, the majority of this court found to constitute a nuisance in **Becker v Cincinnati, 24 Abs 695.**

It is almost identical with the situation presented in **Christen v City of Cincinnati, 62 Oh Ap 528, 15 OO 426.**

As stated in the Christen case, while a situation created by the city may be known to the public and be avoided under normal conditions, when snow and ice, (which the city is bound to know will exist at certain seasons of the year) levels off depressions, rendering their boundaries indefinite and obscure. the city can not claim that it has no notice of such a situation, it is bound to know will exist, or contend successfully that one familiar with the situation, under normal conditions, is guilty of contributory negligence as a matter of law in not being completely aware of a mence to his safety, which has, under such changed conditions, a most uncertain location.

It is our conclusion that the trial court erred in directing a verdict for the defendant, and that the judgment shall be reversed. and the case remanded to the Common Pleas Court, for a new trial.

MATTHEWS, J., concurs.

HAMILTON, PJ. concurring in remand for a new trial.

I do not understand the facts to be as stated in the majority opinion and, therefore, do not agree that the cases cited are applicable. The question presented, as I view it, is, does the failure to grade the dirt along a newly constructed sidewalk to the level of such sidewalk create such a condition as would constitute a nuisance?

As I understand the law, this issue presents a mixed question of law and fact and is for the jury to determine from the facts under proper instructions of the court.

The trial court. therefore, erred in directing a verdict for the defendant, the city of Cincinnati.