ARCHER ET AL., APPELLANTS, *v.* CITY OF PORT CLINTON, APPELLEE.

(No. 39535—Decided April 13, 1966.)

*Mr. Thomas L. Corogin*, for appellants.
*Mr. Adair Wilber*, city solicitor, for appellee.

SCHNEIDER, J. The question of law involved is whether, where the evidence is undisputed that a pedestrian (1) has

present knowledge of a dangerous condition in the curb of a city street, (2) departs from a safe path along a driveway into the area beyond the driveway and near the curb where the danger lies unseen under fallen snow, and (3) takes no precaution to avoid it, such conduct of the pedestrian constitutes contributory negligence as a matter of law. The majority of the court is of the opinion that it does, and that Mrs. Archer's negligence in this case directly contributed to the injuries of which complaint is made.

A motion for a directed verdict in favor of a defendant interposed after the opening statement raises a question of law on the facts presented by that statement and the petition, all of which must be conceded. *Vest, a Minor,* v. *Kramer,* 158 Ohio St. 78.

The situation is as if an agreed statement of facts was presented, except that every reasonable inference from the facts favorable to the party against whom the motion is directed should be indulged. However, omissions, which, if present, might cast a different conclusion, cannot be supplied by the court.

In the course of his remarks in this case, counsel obviously referred to a diagram. But the record before us does not include a reproduction of any such diagram and therefore discloses nothing to indicate that the trial judge did not indulge in every presumption favorable to the plaintiff from the petition, the opening statement and the diagram.

It has been remarked that trial courts should observe great caution in granting judgment on the opening statement to the extent that inquiry should be made, *sua sponte,* whether counsel desires to add to or explain his remarks. *Neckel* v. *Fox,* 110 Ohio St. 150; *Cornell* v. *Morrison,* 87 Ohio St. 215. However there is no indication in the record that counsel here sought to elaborate nor does he claim error on the ground that opportunity so to do was not extended to him.

The gaping hole at the curb had existed for some period of time in front of appellants' property, and Mrs. Archer as well as her entire family knew it and had successfully avoided it. That "she was under the impression as she went around the car, that the hole was further [*sic*] from the automobile,"

is conclusive that knowledge of the danger had become instinctive with her even to the instant of the accident. Although concealed by snow from her sight, it still lurked in her mind.

It is unknown from the record how far the defect was from the driveway. We think that this is immaterial, as counsel apparently thought it was. The farther it was, the greater was her convenience in avoiding it and her carelessness in finding it. The closer it was and the less convenience in avoiding it, the greater should have been her concern for her own safety to avoid it.

When she departed from the driveway, which had been cleared of snow, her conduct ill became that of an ordinarily prudent person under the combination of circumstances in failing to take the precaution of stopping and making sure of her bearings. See *Village of Mineral City* v. *Gilbow*, 81 Ohio St. 263, at pages 278 and 279; *Lundy* v. *City of Ames*, 202 Iowa 100, 209 N. W. 427.

This is not a case of failing to search out danger when there is no reason to apprehend it. Nor is it a case of admitted previous knowledge of a defect coupled with a genuine issue of fact whether the pedestrian was conscious of it at the time of injury.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS and O'NEILL, JJ., concur. HERBERT and BROWN, JJ., dissent.

HERBERT, J., dissenting. I deeply regret that I am unable to reach agreement with my colleagues of the majority. Basically, the problem here does not rest primarily with the rights of Mrs. Archer, important as they are, but rather with the right to trial by jury guaranteed under the provisions of Section 5, Article I of the Constitution of Ohio, where it is said that:

"The right of trial by jury shall be inviolate * * *."

This guarantee was among the fruits harvested from English jurisprudence and the American Revolution and has received vigor and strength from countless hundreds of thousands of our immigrant forefathers who came to our shores.

It is generally a difficult task to unearth all the facts and inferences growing out of litigation and then determine the applicable law. However, our concept of the administration of justice demands unceasing effort and vigilance.

Our constitutional system of government places the administration of justice almost entirely within the stewardship and control of the legal profession. An influential segment of our profession, as well as others, oppose trial by jury. They would place all power and control over the determination of questions, both of fact and law, in the discretion of a single judge, even though experience has taught us that, *in the field of fact*, 12 minds are more discerning and retentive than one mind.

In the case at bar, a jury had been impaneled and sworn to try the issues of the case between Mrs. Archer and the city of Port Clinton. Her counsel made a brief opening statement to the jury in respect to the evidence that such plaintiff expected to produce. At its conclusion the defendant moved the court for an order to direct the jury to return a verdict for the defendant. The trial court, without giving counsel the privilege of expanding his remarks, sustained the motion and entered judgment on a directed verdict in favor of the defendant and against the plaintiff Mrs. Archer.

The question before this court is:

"Are there sufficient facts alleged in the petition and in the opening statement of counsel to submit to the jury?"

This court, in numerous decisons, has established guideposts to direct the evaluation of the evidence necessary to raise a jury question. The leading case is that of *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St. 469. In the third paragraph of the syllabus, in respect to a motion for a directed verdict, it is said that the plaintiff (Mrs. Archer) is "* * * entitled to have the evidence construed *most strongly* in his [her] favor." (Emphasis added.)

Paragraph two of the syllabus in *Vest* v. *Kramer*, 158 Ohio St. 78, reads:

"A motion by defendant for judgment on the pleadings and statement of counsel for the plaintiff is an admission by the defendant, for the purposes of the motion, of the truth of the well-pleaded facts, *the statement of counsel and all proper in-*

*ferences which may be drawn therefrom and leaves no disputed fact to be determined by the jury* but only a question of law for the court.'' (Emphasis added.)

Exhibit A, on page 86, following, marks certain physical facts disclosed by the record.

Let us evaluate the evidence in the light of the guideposts provided by this court in previous opinions.

The majority in its syllabus, referring to Mrs. Archer, said that she (1) ''has present knowledge of a dangerous condition in the curb of a city street * * *.''

The following facts are disclosed by the record at page one:

''Earlier on said date a snow plow had plowed snow off said streets and piled the same along the paved portion of the highway, *covering up the curb and the above-mentioned hole* and as a result, *plaintiff could not see or locate said hole as she walked around said automobile to get in.*''

At pages 8 and 9 of the record is the following, referring to the time of the accident:

''In the winter, on December 7, 1962 * * * the city of Port Clinton *had a very heavy snow.* Snow plows went out on the 7th and plowed the streets and on the evening of the 7th we had another storm and the plows went out again to plow the streets. The next day * * * the city had plowed the snow off this intersection once more and covered his [Archer's] driveway.''

It is not necessary to draw an inference, as the actual fact is, according to the record, that Mrs. Archer could not see any mark or indication of where the sewer damage was. She had no *present knowledge* of its exact location. Nature had obliterated every mark, physical feature or other indication of the location of the damaged drain.

The syllabus of the majority continues in this language:

(Mrs. Archer) ''(2) departs from a safe path along a driveway into the area beyond the driveway and near the curb where the danger lies unseen under fallen snow, and (3) takes no precaution to avoid it * * *.''

On the record, Mrs. Archer did not depart from any path. The second paragraph of the petiton states that:

''* * * plaintiff was walking around an open door of a [*sic*]

automobile standing in the driveway at her home at 115 Laurel Avenue at a point *within the right of way of West Second Street* at the intersection of Laurel Avenue, which streets are duly dedicated public thoroughfares in said city." (Emphasis added.)

At page 9 of the record it is disclosed that Mrs. Archer "felt that she was safe on taking the path that she did."

The majority are apparently endeavoring to draw an inference that Mrs. Archer departed from her path and walked southerly, at least 15 feet from the automobile to a place near the curb. There are no facts to support this. When this street was dedicated, the city retained a strip of land 15 feet wide on either side of the traveled surface for widening, sidewalk and other purposes. Consequently, the majority is trying to say that Mrs. Archer crossed this right-of-way strip, a distance of 15 feet from the automobile, and stepped into the hole. This is not supported by the record.

In brief, Mrs. Archer, with her daughter, son and a friend of his, stepped out of their house and onto the driveway and walked toward the automobile for the purpose of going to the store. The two boys got into the car and left a door open for Mrs. Archer and her daughter to get in. As Mrs. Archer stepped past the door, her feet "slipped" and into the hole she went. She did not walk across the right-of-way strip, but the record does explain quite clearly just what happened. The heavy snow, even though the driveway was shoveled off twice, obliterated the edge of the driveway so that a person walking along might step off the driveway unconsciously, not being able to see as there were no guidelines left above the snow. Now, it does appear in the record in the third paragraph of the petition that the curb was "broken and a portion missing at this point, leaving a hole exposed leading directly into a sewer about eight inches wide, two feet long and about three feet deep. The ground north of and immediately adjacent to this hole had *eroded* and a dangerous situation was presented." This, of course, was on city property. A private property owner was not permitted to repair sewers on city property. The city here had failed for at least six months to repair it. The property owners in that area were helpless. The condition is definitely known to have

existed at least six months and by reason of the depth of the erosion action (three feet) it must have been in existence a long time prior to the six months.

At page 9 of the record is this language:

"* * * and Mrs. Archer on walking around past here on this side of the automobile *slipped* right into this hole. * * * the hole was not visible."

Everyone recognizes erosion and knows what happens as water continually runs down a slope.

At page 8 of the record it is said that:

"* * * the ground had a partial slope which would run down there into this hole."

A slippery condition just off of the driveway had been created either by reason of freezing of moisture under the snow or further erosion action, either of which would create a slippery condition under the snow, unseen or unknown to any of the Archer group. Mrs. Archer, in stepping back or around the open door undoubtedly stepped on the slippery sloping condition and down she went into the hole.

The majority complains that Mrs. Archer took "no precaution to avoid" the danger. According to the admitted facts, Mrs. Archer believed that she was safe. Her daughter and her son likewise thought that she was safe. They are sensible, they are reasonable ordinary prudent people.

Quoting the majority opinion further:

"The gaping [there is no such expression in the record] hole * * * had existed some period of time *in front of appellant's* [Mrs. Archer's] *property* * * *."

The broken curb was in the right-of-way of West Second Street (petition) which is south of the Archer home and on city property. The record makes this quite clear, where, on page 8, is the following language that is admitted to be true:

"Now, the Archer's moved at the corner of a street which is commonly known as West Second Street and Laurel Avenue in the city of Port Clinton, Ohio. Both of these streets are public thoroughfares and the Archer house is the corner house with the front facing Laurel, *which is west, and the side of the house facing the south.*" (Emphasis added.)

The two streets intersect. The sewer damage was on West

Second Street which is to the south (not in front) of the Archer property. At the conclusion of the opening statement, the jury was excused, and the record, at page 13, continues:

"The Court: Make your motion, Mr. Peterson [attorney for the defendant].

"Mr. Peterson: Move for a judgment on the opening statement, your Honor, for the defendant, the plaintiff having admitted in the opening statement that the plaintiffs had knowledge of the dangerous condition.

"The Court: Well—

"Mr. Peterson: For a period previous to—I'd (8) have to check the record to be sure.

"The Court: For some period.

"Mr. Peterson: For some period before the time of the accident.

"The Court: Make your argument.

"Mr. Corogin: [plaintiffs' counsel] I'll hand the court a decision which is a case in point which states that the covering up of a defect in the street—in that case it was eight inches deep, I believe—was sufficient excuse for the plaintiff to prevent the city from alleging that she was guilty of contributory negligence as a matter of law, and the final effect of that decision was that the court said the case should go to the jury on the issue of whether there was contributory negligence. The court would not in that case, due to the freshly fallen snow, hold her as negligent as a matter of law.

"The Court: All these cases are different, Mr. Corogin, *they are not in front of the property where they resided,* and I think the motion of the defendant is well taken and I will call the jury in and direct a verdict for the defendant." (Emphasis added.)

The plaintiffs' counsel was not given any opportunity to make any further explanation relative to the evidence nor did the court make any inquiry as to any feature of the evidence that may have been omitted or confused. The court itself was confused and mistaken when it emphasized *"in front of the property"* which was not correct. According to the record the damaged sewer was to the west and side of the house.

In directing the verdict to the jury during the trial court's comments to the jury, the court said:

"*Now, had that place been other than in front of the residence* * * * I would not have directed a verdict." (Emphasis added.)

The record *specifically places* the damaged sewer not on Laurel Street but on West Second Street at *the south side* of plaintiffs' home.

In support of its position the majority cites *Neckel* v. *Fox*, 110 Ohio St. 150. In it the answer of the defendant set up contributory negligence as a defense and otherwise denied generally. At the conclusion of the opening statement, the trial court inquired of plaintiffs' counsel whether they desired to say anything further or otherwise enlarge upon their statement. A negative reply was received whereupon the trial court directed the jury to return a verdict for the defendant. The Court of Appeals affirmed. This court reversed the judgments of the trial court and the Court of Appeals, giving "plaintiff a reasonable and liberal construction to the statement of her counsel" * * * and stated, "this court finds itself unable to make any satisfactory ruling upon the facts stated in the record."

It should be noted in the case at bar that plaintiffs' counsel was not permitted or given an opportunity to explain or to make any further statement.

The majority also cites *Cornell* v. *Morrison*, 87 Ohio St. 215, being an action upon an alleged contract. After plaintiffs' counsel had made a rather extensive opening statement, the court inquired whether counsel cared to say anything further particularly "in respect to this sale"? Plaintiffs' counsel proceeded to make a further rather detailed statement. He failed however to establish the contract upon which the action was brought, and a directed verdict was entered. It should be noted that the court did give the plaintiff in the *Morrison case* ample opportunity to make full and complete explanation of everything that he desired to allege.

Those two cases are authority to support the position of Mrs. Archer that she was entitled to have a jury pass upon the question of contributory negligence.

To support its claim of contributory negligence, the majority cites *Village of Mineral City* v. *Gilbow*, 81 Ohio St. 263. Any claimed similarity to the case at bar is completely eliminated by the facts of the case. At page 276 in *Gilbow*, referring to the plaintiff, the court said:

"* * * Her injury did not result from any defect in the street, nor from any excavation, pit or precipice in such proximity to the street as to endanger travelers thereon. It was caused *wholly by her act of leaving a safe way in the street, crossing the street and sidewalk and straying upon private property.*" (Emphasis added.)

*Lundy* v. *City of Ames*, 202 Iowa 100, 209 N. W. 427, is cited by the majority. There was a very steep slope or drop in a sidewalk covered with ice from two to three inches thick. Children had been sliding upon this area. The plaintiff was well-acquainted with the slippery and steep condition of the sidewalk and knew that it was dangerous but nevertheless he determined to walk down this icy stretch of sidewalk with the result that he fell and injured himself. There can be no comparison whatsoever between the facts in the *Lundy case* and in those in the case at bar.

*Cassidy* v. *Cincinnati*, 32 Ohio Law Abs. 444, is well in point. In *Cassidy* a new sidewalk had been constructed, having a width of nine feet and eleven inches. At a certain point this sidewalk was suddenly narrowed two feet, creating "a hole some five feet long by two feet wide, and six inches deep."

The plaintiff was familiar with this situation and condition. However, shortly before the cause of action arose, a windy snowstorm occurred, filling the area or hole created by the narrowing of the sidewalk and leaving no outlines to indicate its location. The plaintiff walking along the sidewalk, and knowing of the condition as it existed normally, stepped into the snow covered "hole," fell and sustained serious injuries. The trial court directed the jury to return a verdict for the defendant by reason of contributory negligence as a matter of law. The Court of Appeals reversed and remanded the cause for a new trial and submission of the fact issued to the jury. A motion to certify the record was overruled by this court on October 23, 1940.

The recent case of *Grossnickle* v. *Village of Germantown*, 3 Ohio St. 2d 96, is quite well in point. In *Grossnickle*, the city had negligently permitted water to continuously gush out of a drinking fountain, and during freezing weather it created an icy condition on the sidewalk. In *Grossnickle*, the plaintiff knew of this condition. On one cold morning, as the plaintiff walked to work, she slipped and fell on the icy sidewalk. She had not seen the ice patch because her senses were diverted by the wintry winds and her concern for traffic conditions at the intersection. This court held (in paragraph three of the syllabus) that the plaintiff was not negligent *as a matter of law*, although she had a plain view of the icy condition on the sidewalk ahead of her. Here, Mrs. Archer could not see the defective sewer and the erosion trench underneath the snow as there were no indications whatsoever that would locate the danger. Mrs. Archer was thinking about her errand to the store and the path that she was taking around an automobile and was in a condition of mind far more occupied than that of the plaintiff in *Grossnickle*.

In the instant case, the city was negligent and in violation of the duties imposed upon it by Section 723.01 of the Revised Code.

The question that should have been submitted to the jury was the determination of the proximate cause of Mrs. Archer's injuries. (1) Was the proximate cause the unprecedented heavy snow? (2) was the proximate cause the long-continued failure of the city to correct the dangerous condition in its street? (3) was the proximate cause due to both the unprecedented natural snow storm and the negligence of the city?, and (4) was the proximate cause the result of any negligence on the part of Mrs. Archer? This writer cannot find any negligence on her part under all the circumstances.

The judgments of the Court of Appeals and of the Common Pleas Court should be reversed and the cause remanded to the Common Pleas Court for a new trial.

BROWN, J., concurs in the foregoing dissenting opinion.

86

Exhibit A.

N

W

S

← West Second Street → _ E

← Laurel-Ave →

Both Streets Dedicated to the Public