KNOP et al., Appellants and Cross–Appellees,

v.

CITY OF TOLEDO et al., Appellees and Cross–Appellants.

[Cite as *Knop v. Toledo* (1995), 107 Ohio App.3d 449.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–173.

Decided Nov. 17, 1995.

*George R. Smith, Jr.,* for appellants and cross-appellees.

*Geoffrey H. Davis,* for appellees and cross-appellants.

GLASSER, Judge.

This case is an appeal from a judgment of the Lucas County Court of Common Pleas. Appellants Brenda Knop, Frank Knop, Kristina Russell and Antoinette Russell (collectively, "the Knops") are appealing the grant of a directed verdict, rendered at the conclusion of the opening statement, as to appellees Jerry P. Gears, Charles J. Hymore, Wendell P. Smith, Daniel M. Schultz, Sr., William J. Gast, Michael D. Riddle and Timothy J. Noble. The Knops are also appealing the trial court's grant of a directed verdict, rendered at the conclusion of the plaintiffs' case in chief, as to appellees the city of Toledo, Marti Felker and Melvin J. Stachura, Richard G. Wise and Thomas E. Kosmyna. Further, the individual police officers, as a cross-assignment of error, are appealing the trial court's denial of their motion for summary judgment.

The facts of this case are as follows. During the summer of 1991, Detective Kosmyna, of the Toledo Police Department, was conducting an ongoing investigation concerning the sale of illegal drugs in the neighborhood of Mozart Street in Toledo, Ohio. On August 9 and 19, 1991, an informant told Detective Kosmyna that he had purchased drugs from a man, at night, at 248 Mozart Street. The drug purchases tested positive for cocaine. The informant also told Detective Kosmyna that the drug dealer was "paranoid."

On August 20, 1991, Detective Kosmyna applied to the Toledo Municipal Court for a search warrant authorizing a search of 248 Mozart Street. Detective Kosmyna requested that the search warrant permit a nighttime search to provide for the safety of police officers. On August 20, 1991, the municipal court judge issued a search warrant authorizing a nighttime search of 248 Mozart Street based on Detective Kosmyna's affidavit.

On the evening of August 21, 1991, Sergeant Stachura and Officers Gears, Hymore, Lubinski, Smith and Wise approached the home located at 248 Mozart Street in order to execute the search warrant.

The Mozart Street home proved to be the residence of the Knop family. At the time the officers approached the home, Brenda Knop was in the bathroom and Frank Knop had left to buy snacks for the evening. Kristina and Antoinette

Russell, along with Kristina's baby, were sitting in the living room watching television. Witnesses gave contradictory testimony concerning the manner in which the officers entered the Knop home.

The Russells testified that they were sitting on the living room couch, in the dark, watching television. Their backs were to the front door because the couch faced away from the front door into the living room. The Russells further testified that they heard footsteps on the front porch and assumed that it was their father returning from the store. The Russells stated that they next heard the front door open and a number of people entered the living room yelling "Get down." Because the room was dark and the persons entering had bright flashlights, the Russells testified that they could not immediately identify the persons who entered the living room.

Sergeant Stachura, who led the team of police officers executing the warrant, testified that the team quickly approached the home and went up the stairs leading to the front porch. Stachura further testified that the main door to the home was open but that a glass storm door was closed. Stachura also testified that the lights were on in the home and he observed an individual inside staring at him through the glass storm door as the officers approached. Stachura stated that the individual was aware that police officers were on the porch but never moved. Stachura testified that he knocked at the storm door, waited a moment and then opened the storm door as he shouted, "Police. Search warrant." The subsequent search of the home did not reveal the presence of any illegal drugs. Subsequently, the Knops filed suit against the city of Toledo, Police Chief Felker and the following police officers: Sergeant Stachura and Officers Gears, Hymore, Smith, Wise, Schultz, Gast, Kosmyna, Riddle, Noble and Lubinski.[1] The Knops alleged violation of their rights under Section 1983, Title 42, U.S.Code, deprivation of their rights under the Ohio Constitution and related state common-law causes of action for false arrest, assault and invasion of privacy. All of the Knops' claims were based on allegations that police officers made an unconstitutional entry into their home by failing to adhere to the "knock and announce" requirement of R.C. 2935.12.

Subsequently, the ten individual police officers moved for summary judgment on the ground of qualified immunity. On March 16, 1993, the trial court denied this motion for summary judgment.

On October 4, 1993, a jury trial was held. At the conclusion of the Knops' opening statement, Officer Gears, Hymore, Smith, Schultz, Gast, Riddle and Noble moved for a directed verdict on the ground that they were not specifically

---

1. Toledo Police Officer Sandra J. Lubinski, although named as a defendant, was subsequently dismissed from the suit at the plaintiffs' request.

named in plaintiffs' opening statement. The trial court granted this directed verdict.

The case continued as to the remaining parties, *i.e.,* the city of Toledo, Chief Felker and Officers Stachura, Wise and Kosmyna. At the conclusion of the plaintiffs' case in chief, the remaining defendants moved for a directed verdict on the ground that the Knops had failed to prove any federal or state constitutional violation. The trial court granted the motion for directed verdict in favor of these remaining defendants.

It is from this judgment that the Knops raise the following four assignments of error:

"I. The trial court erred in denying plaintiffs' cross-motion for partial summary judgment since it was undisputed that the City of Toledo Police Department adopted a policy of automatically effecting forcible entry in execution of all search warrants for narcotics and that the police effected entry into plaintiffs' home without giving them the opportunity to voluntarily cooperate and surrender their privacy in violation of the knock and announce requirement.

"II. The trial court erred in granting defendants' motion for directed verdict on plaintiffs' opening statement and abused its discretion in denying plaintiffs the opportunity to reopen to identify the individual defendants by name.

"III. The trial court erred in granting defendants' motion for directed verdict at the close of plaintiffs' case-in-chief in that it impermissibly weighed the evidence; disregarded conflicting testimony from plaintiffs regarding the manner in which the police entered their home; and ignored Sixth District precedent setting the standards with which police must comply in executing search warrants.

"IV. Evidence of—and questioning concerning—a prior decision of the court of common pleas involving essentially the same parties and the same course of conduct is admissible for purposes of proving knowledge and routine practice and its exclusion by the trial court was prejudicial error."

It is also from this judgment that the city of Toledo and its police officers raise the following cross-assignment of error:

"Defendants were entitled to summary judgment prior to trial in light of the state of the law pertaining to 42 U.S.C. 1983 causes of action, to execution of search warrants for drugs and to exigent.circumstances and the trial court erred in denying defendants' motion for summary judgment."

The Knops' second assignment of error will be addressed first. The Knops argue that the trial erred in granting a directed verdict at the close of

opening statement for failing to identify, by name, several of the individual police officers named in the complaint.

However, in *Archer v. Port Clinton* (1966), 6 Ohio St.2d 74, 76, 35 O.O.2d 88, 89–90, 215 N.E.2d 707, 709, the court held that both the opening statement and the allegations of the complaint must be considered in ruling on a motion for a directed verdict at the close of the opening statement.[2] Therefore, the trial court erred in granting a directed verdict as to the individual officers who were identified by name in the complaint but whom the Knops failed to identify by name during their opening statement. Accordingly, the second assignment of error is found well taken.

The Knops' first and third assignments of error and the city of Toledo's cross-assignment of error will be addressed next. The essential issue raised by the parties, both in their respective motions for summary judgment as well as the motion for a directed verdict, is whether the police entered the Knop home in violation of the constitutional right prohibiting unreasonable searches.

Initially, this court would note that the same standard is applicable to both summary judgments as well as directed verdicts. *Hinkle v. Cornwell Quality Tool Co.* (1987), 40 Ohio App.3d 162, 165, 532 N.E.2d 772, 773. Determination of a motion for summary judgment is controlled by Civ.R. 56(C):

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Determination of a motion for a directed verdict is governed by Civ.R. 50(A)(4):

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that

---

2. We further note that, even had the plaintiffs omitted an essential fact, the better practice by the trial court would have been to grant the Knops the opportunity to reopen opening statement.

conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

Both summary judgment and a directed verdict will be granted only if, after construing the evidence most strongly in favor of the party opposing the motion, reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Keeping this standard in mind, we now turn to the parties' assignments of error.

The Knops seek redress for violation of their constitutional rights under Section 1983, Title 42, U.S.Code, which reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1983 provides a citizen with a cause of action for deprivation of his or her constitutional rights by a governmental body's laws or customs. *Adickes v. S.H. Kress & Co.* (1973), 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142, 159–160. However, a plaintiff, in order to prevail on a Section 1983 action, must not only show that the governmental body authorized an unconstitutional law or custom. The plaintiff must show that he or she, in fact, suffered a constitutional deprivation. *Los Angeles v. Heller* (1986), 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 810–811. The *Heller* court specifically pointed out that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id.*

■ The Knops argue that the constitutional injury they suffered was a violation of the prohibition against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. Specifically, the Knops argue that the search of their home was unconstitutional because police officers failed to knock, announce their purpose and be refused admittance before forcibly entering the home as required under R.C. 2935.12(A).

R.C. 2935.12(A) codifies the common-law rule prohibiting unannounced intrusions into a dwelling, known as the "knock and announce principle," as follows:

"When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a

dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."

R.C. 2935.12(A) is mirrored in federal law under Section 3109, Title 18, U.S.Code, as follows:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

In *Wilson v. Arkansas* (1995), 514 U.S. ——, ——, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 979–981, the United States Supreme Court specifically held that the knock-and-announce principle is an element of the Fourth Amendment's guarantee against unreasonable search and seizure. Further, the knock-and-announce principle requires that police officers not only must announce themselves but also must be refused admittance before forcibly entering a home. R.C. 2935.12(A). A forced entry, while officers are knocking and announcing themselves as police, does not satisfy the requirement that an occupant must be given the opportunity to refuse admittance. However, courts have unanimously held that exigent circumstances may excuse an officer's compliance with the knock-and-announce principle. *Wilson,* 514 U.S. at ——, 115 S.Ct. at 1918, 131 L.Ed.2d at 982–83; *Gaston v. Toledo* (1995), 106 Ohio App.3d 66, 665 N.E.2d 264.

In the present case, a review of the evidence shows that reasonable minds could disagree as to whether police officers violated the knock-and-announce rule in entering the Knop home or whether exigent circumstances existed which would excuse that requirement. The Russells testified that the officers never knocked and never announced they were police officers before forcibly entering their home. While Sergeant Stachura contradicted the Russells' testimony, he did testify at one point that he knocked and then announced that they were police with a search warrant *as he was opening the storm door to the Knops' home,* thus failing to give the Knops an opportunity to respond.

Further, a review of the evidence again shows that reasonable minds could disagree as to whether exigent circumstance existed which would excuse the officers' compliance with the knock-and-announce requirement. Sergeant Stachura testified that individuals in the home saw police approaching and made no effort to open the door, thus creating a reasonable fear for the officers' safety. However, the Russells' testimony was that their backs were to the front door and they never saw the police approach their home. Because there existed an issue of fact as to whether the officers announced themselves, gave the Knops an opportunity to refuse admittance, or were reasonably concerned for their safety,

the trial court properly denied the parties' respective motions for summary judgment but improperly granted the city's motion for a directed verdict at the conclusion of the plaintiffs' case. Accordingly, we find the Knops' first and third assignment of error well taken and the city's cross-assignment of error not well taken. Given our disposition of these assignments of error, we find the Knops' fourth assignment of error need not be addressed.

On consideration whereof, the court find substantial justice has not been done the party complaining, and the directed verdicts of the Lucas County Court of Common Pleas are reversed. It is ordered that appellees pay the costs of this appeal as provided for under App.R. 24.

*Judgment reversed.*

ABOOD, P.J., and MELVIN L. RESNICK, J., concur.