JOURNAL ENTRY AND OPINION
Plaintiff-appellee Brandon/Wiant Company won a jury verdict against defendant-appellant The Cadle Company on Brandon/Wiant's claim to recover a real estate brokerage commission in connection with Cadle's September 1996 sale of the Superior Building in Cleveland, Ohio. Cadle's appeal contends that the verdict was against the manifest weight of the evidence and that Cadle should have been granted leave to file for summary judgment. We find Cadle's appeal is not well taken, so we affirm.
The evidence at trial was that the SCR Joint Venture was formed in late 1992 and consisted of the Cadle Company as a general partner, SLC Capital as a special limited partner, and other individual investors as limited partners. In late 1994 or early 1995, the SCR Joint Venture and the Dan Joint Venture, which consisted of the Cadle Company as a general partner and Daniel and Ruth Cadle as limited partners, put up approximately equal monies to purchase the note and mortgage for the Superior Building from the Resolution Trust Corporation for approximately $2.7 million after the building's former owner went into foreclosure. The note and mortgage were held in the name of the Cadle Company for the benefit of the other investors. Shortly thereafter, and on application by the Cadle Company, Brandon/Wiant was appointed receiver of the Superior Building by an order of the Cuyahoga County Common Pleas Court. In September 1995, the Superior Building was purchased at sheriff's auction for $3 million by the Cadle Company, which again held title for the benefit of the SCR Joint Venture and the Dan Joint Venture. Brandon/Wiant was retained as property manager and leasing agent for the building. Brandon/Wiant was paid a management fee of four percent of gross billings.
The Superior Building soon attracted the attention of David Bishoff, the president of the EV Bishoff Company of Columbus, Ohio. In early 1996, Bishoff walked into the Superior Building and inquired whether the building was for sale. Bishoff was referred to Frank Previt of Brandon/Wiant. Previt informed Bishoff that the note to the building was owned by the Cadle Company. Bishoff then contacted Daniel Cadle and expressed his interest in purchasing the Superior Building, but Cadle and Bishoff were unable to come to terms at that time.
Cadle subsequently entered into negotiations with another prospective purchaser. They had reached agreement on a sales price of $3.6 million, but the prospective purchaser later reconsidered and withdrew from the purchase. When that proposed sale fell through, Frank Previt of Brandon/Wiant placed a "cold call" to David Bishoff in May 1996 to inquire whether he was still interested in purchasing the Superior Building. Bishoff stated that he was still interested in acquiring the Superior Building, but indicated that he did not think he could do business with Daniel Cadle based on their earlier experience. On Previt's suggestion, Bishoff agreed to meet with Previt and Terry Sullivan. Sullivan was an officer of SLC Capital, one of the partners of the SCR Joint Venture, who generally represented the interests of the other limited partners in the joint venture and acted as an intermediary between those investors and the Cadle Company.
With Daniel Cadle's approval, Sullivan met with Bishoff and Previt and reported that Cadle would agree to sell the Superior Building to Bishoff for $3.6 million. Further negotiations included direct correspondence between Bishoff and Cadle. During the course of the negotiations, Frank Previt supplied Bishoff with pertinent information concerning the income and expenses of the building.
By early July 1996, Previt learned that Bishoff was about to transmit to Cadle an offer to purchase the Superior Building. On July 3, 1996, Previt sent to Cadle by facsimile a correspondence which stated:
 Please be advised that The Superior Building, 815 Superior Avenue, Cleveland, Ohio has been presented for purchase to Mr. David Bishoff of The Bishoff Company. In the event a sale or other transaction is consummated between you and David Bishoff, The Brandon/Wiant Company, as procuring broker, will be due a real estate commission equal to 3.5% of the gross consideration of the transaction. The fee is payable out of escrow at closing.
 Per Ohio law, an Agency Disclosure Statement will be forthcoming.
 We look forward to working with you on this matter. If you have any questions or need anything, please let me know.
Sincerely,
THE BRANDON/WIANT COMPANY
/S/ Frank M. Previt
Both Daniel Cadle and Terry Sullivan acknowledged that they received Previt's July 3, 1996 correspondence. Cadle did not respond to Previt's letter and instead ignored it in the belief that Brandon/Wiant was not entitled to any brokerage commission in connection with the proposed sale to Bishoff.
Bishoff transmitted his purchase offer to Cadle on July 5, 1996. Negotiations continued and Cadle and Bishoff ultimately reached agreement on a sales price of approximately $3.5 million. Cadle continued to refer matters to Previt of Brandon/Wiant throughout the course of the negotiations. Cadle sought Previt's review and comments on the terms of the proposed purchase agreement but never indicated that Cadle disputed the claimed brokerage commission. After other issues were resolved, the transaction closed on September 20, 1996.
Because Cadle refused to pay a brokerage commission, Brandon/Wiant filed this action against the Cadle Company. Upon trial to a jury, Brandon/Wiant was awarded damages in the amount of $29,750.00. The trial court additionally awarded $5,004.52 as statutory interest from September 20, 1996 until the date of the award. The Cadle Company appealed and presents two assignments of error, the first of which asserts
 I. THE TRIAL COURT'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The assignment of error is not well taken.
Our authority to reverse the jury's verdict is limited. If the judgment is supported by some competent credible evidence going to all the essential elements of the case, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. See C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279. We are guided by the presumption that findings of the trier-of-fact are correct. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77. If the evidence is susceptible of more than one construction, we must give it that interpretation which is most consistent with the verdict and judgment. See Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. The jury's verdict cannot be reversed for being against the weight of the evidence unless all three judges hearing the appeal concur. See Section 3 (B) (3), Article IV, Ohio Constitution. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380.
Cadle argues that the jury's verdict is against the weight of the evidence in four specific respects. It first contends that Brandon/Wiant failed to prove that Frank Previt was a licensed real estate broker at the time of the transaction. The record shows, however, that Previt testified, "I'm a licensed sale agent" for sales of commercial real estate. (Tr. 123.) Previt also identified Exhibit 21 as the brokerage license of the Brandon/Wiant Company and Exhibit 22 as Previt's license as a real estate agent. (Tr. 123.) While Cadle now questions whether Previt was still licensed in 1996 because Previt's license was issued in 1992, Cadle presented no evidence to suggest the license was not currently in effect or to controvert Previt's testimony, which clearly stated in the present tense his licensing status.
Cadle argues that Brandon/Wiant did not prove Cadle contracted for or ratified Brandon/Wiant's brokerage services. We cannot agree. Previt's July 3, 1996 correspondence to Cadle plainly put Cadle on notice that Brandon/Wiant was claiming that it had provided brokerage services in connection with this proposed sale and was demanding a commission as compensation for those services. Cadle admitted that it did not respond to the July 3, 1996 correspondence and in fact chose to ignore it. Cadle nevertheless continued to call on Previt and Brandon/Wiant to render services intended to bring this transaction to closure. While Cadle insisted at trial that neither Previt nor Brandon/Wiant furnished brokerage services and that in fact there was no broker involved in the sale of the Superior Building from Cadle to Bishoff, the proposed purchase contract drafted by Cadle and Bishoff, which Cadle asked Previt to review on July 23, 1996, provided that the purchaser could, in the event of damage to or destruction of the premises, rescind the contract "by giving written notice to the Seller and broker * * *." (Emphasis added.) Cadle's conduct could have caused Brandon/Wiant to conclude reasonably it was the broker for this transaction, particularly when Cadle gave no contrary indications. Moreover, Cadle had notice of but did not dispute Brandon/Wiant's claim to a real estate commission all the while that Cadle continued to use services that Brandon/Wiant specifically indicated to Cadle were in the nature of compensable brokerage services. From this evidence, the jury could reasonably find Cadle implicitly accepted Brandon/Wiant's brokerage services and, consequently, was obliged to compensate them for those services. In other words, there were sufficient grounds for Brandon/Wiant's recovery.
Cadle next argues that Brandon/Wiant did not prove that it was the procuring cause of the sale. We believe the jury could find otherwise from the evidence presented. First, Previt testified he believed he was the procuring cause for the sale. (Tr. 134-135.) Previt recalled that when the sale to another purchaser did not go forward, he "cold called" Bishoff to inquire whether Bishoff was still interested in purchasing the Superior Building. In a deposition that was played for the jury, Terry Sullivan acknowledged that he believed and communicated to Daniel Cadle "that had Frank Previt not gotten Bishoff to come back, * * * the sale would not have occurred to Bishoff * * *." (Sullivan Depo. at 30.) And although Bishoff disputed whether Previt was the procuring cause, Sullivan testified that Bishoff had likewise expressed the view that "Mr. Bishoff would not have come back to the table if Frank Previt had not brought him out to meet with me * * *." (Sullivan Depo. at 46, 129.) The jury could reasonably find from this evidence that Brandon/Wiant's efforts directly originated a series of events which, without breaking their continuity, directly resulted in producing a purchaser who was ready, willing, and able to buy real estate on the owner's terms.
Cadle lastly argues that Brandon/Wiant did not prove damages that would support the amount of the verdict. We cannot agree. There was no dispute that Brandon/Wiant furnished services in connection with the sale of the Superior Building from Cadle to Bishoff. Brandon/Wiant maintained that its services were in the nature of brokerage services while Cadle insisted that Brandon/Wiant's services were merely in the nature of property management which Brandon/Wiant was already obligated to provide. Resolving that conflict was within the jury's province. The jury also had to decide the extent to which Previt's "cold call" to Bishoff was responsible for causing the sale after Bishoff testified that he was the first to call Previt to inquire about the status of the building, only to learn that the building was then under contract to be sold to another purchaser. The jury was instructed that it could award damages to Brandon/Wiant under the terms to which they agreed or, alternatively, for the reasonable value of the services rendered. It may be that the jury did not accept either side's contention in its entirety, since it awarded less than Brandon/Wiant claimed was owed but more than Cadle claimed was due. When the jury determined the reasonable value of brokerage services which produced the sale, the jury presumably resolved the evidentiary conflicts. The jury's verdict is supported by competent, credible evidence in the record, and we have no reason to believe that "the jury clearly lost its way" and created "a manifest miscarriage of justice." State v.Thompkins, supra, 78 Ohio St.3d at 387 (quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175).
The jury's verdict was not against the manifest weight of the evidence. Cadle's first assignment of error is overruled. Cadle's second assignment of error states:
 II. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT.
This assignment of error lacks merit.
Once an action has been set for pretrial or trial, a defending party may make a motion for summary judgment "only with leave of court." Civ.R. 56 (B). Cf. State ex rel. Lantz v. Indus. Comm.
(1993), 66 Ohio St.3d 29, 31. The court has discretion to grant or deny leave to file for summary judgment after the matter has been scheduled for pretrial or trial and will not be reversed without showing that discretion was abused. See Woodman v. TubbsJones (1995), 103 Ohio App.3d 577, 582; Paramount Supply Co. v.Sherlin Corp. (1984), 16 Ohio App.3d 176, 179-180. We find no abuse of discretion here.
The record reflects that the trial court conducted pre-trials on August 28, 1997 and November 4, 1997. At the November 4, 1997 pre-trial, the court set a discovery cut-off date for May 1, 1998 and scheduled the matter for final pre-trial on May 4, 1998 and for trial on May 21, 1998. From the absence of any indication in the court's November 5, 1997 scheduling order, we infer that neither party indicated that a summary judgment motion was likely and neither party requested or obtained a schedule for such motion practice. It was not until April 27, 1998 that the Cadle Company filed its motion requesting leave to file a motion for summary judgment, almost six months after the trial date had been set. The motion for leave was denied on May 12, 1998, and trial commenced on May 21, 1998.
The court did not abuse its discretion by denying Cadle leave to file for summary judgment. Cadle did not seek leave to file for summary judgment until April 27, 1998. Under Local Rule 11 (I), Brandon/Wiant's response to this motion would not be due before May 27, 1998, six days after the date the trial was to start. Granting Cadle's motion, therefore, would have caused a conflict with the previously-scheduled trial date. The court could reasonably have determined that any summary judgment motion practice should have commenced at a time that would not interfere with the scheduled trial date.
Cadle also has not demonstrated that it was prejudiced by having been denied leave to file for summary judgment. It is instructive to note that after Cadle was denied such leave, Cadle did not move for a directed verdict during the trial, even though the standard for deciding a motion for summary judgment and a motion for directed verdict is essentially the same. See Knop v.Toledo (1995), 107 Ohio App.3d 449; Motorists Mut. Ins. Co. v.Rockwell (1990), 69 Ohio App.3d 159. See, also, Evely v. CarlonCo., Div. of Indian Head, Inc. (1983), 4 Ohio St.3d 163, 165. Moreover, because the evidence at trial demonstrated there were genuine issues of material fact properly submitted to the jury and resulted in a verdict in favor of Brandon/Wiant, any error in denying Cadle leave to file for summary judgment must be considered moot or harmless. See Continental Ins. Co. v.Whittington (1994), 71 Ohio St.3d 150, syllabus; RE America, Inc.v. Garver (Feb. 8, 1996), Cuyahoga App. Nos. 66808, 66947, unreported.
The court's order denying Cadle leave to file for summary judgment was not an abuse of the court's discretion. Cadle's second assignment of error is not well taken.
The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONANGLE, J., and LEO M. SPELLACY., J., CONCUR.
 _________________________ DIANE KARPINSKI PRESIDING JUDGE