JOURNAL ENTRY AND OPINION
{¶ 1} This is a pro se appeal from an order of Visiting Judge Robert Lawther that, after appellant Stanley Alsenas' pro se opening statement, granted a directed verdict in favor of appellees Kenneth F. Barberic, John J. Delpra, William Florio and Nancy Jones Florio (collectively, Neighbors) on Alsenas' claims for ejectment. Among other errors, he asserts that the judge failed to state reasons for the directed verdict. We affirm.
 {¶ 2} In 1997, Venta Construction, Inc, (Venta), Alsenas' wholly-owned, closely held corporation, acquired real estate in Brecksville, Ohio, from Algis Sirvaitis. It was originally designated as sublot nine of the proposed Chevy Chase Resubdivision, and we retain that description in the spirit of consistency of the record. The Florios own adjoining sublot eight, and Barberic and Delpra own adjoining sublot ten, each with a single-family residence, while sublot nine remains undeveloped.
 {¶ 3} In 1998, Alsenas, a developer and the original builder of this subdivision, applied to the City for a building permit to construct a single-family home on the lot. When the City denied his request, Alsenas, pro se, filed suit in Federal District Court for the Northern District of Ohio against the Neighbors and a variety of City officials and employees, alleging various causes of action rooted in constitutional due-process principles. Judge Solomon Oliver, Jr. granted motions to dismiss and motions for judgment on the pleadings disposing of that case, and the Sixth Circuit Court of Appeals affirmed that decision.[1]
 {¶ 4} On August 18, 2000, Alsenas, again pro se, filed this complaint both as an individual and for Venta, alleging that the Florios, on one side, and Barberic and Delpra, on the other, were encroaching on sublot nine, interfering with his ability to access it, and that the property, alleged to be worth $200,000 if developed, was now worthless. He prayed for: (1) a declaratory judgment that the disputed portions of the various properties belonged to him and/or Venta; (2) delivery of full possession of the disputed land to him and/or Venta; and, (3) compensatory and punitive damages for withholding possession and legal costs. The Neighbors answered and filed a third-party complaint against the City alleging negligence and contribution claims. Judge Kenneth Callahan, originally assigned to the case, granted the City's motion to dismiss the third-party complaint, ending its involvement.
 {¶ 5} Although Alsenas had been repeatedly advised by the judge and the Neighbors that, as a layman, he could not represent the interests of Venta and should hire an attorney, he insisted on proceeding pro se, for both himself and the corporation. Trial commenced and Alsenas, as his opening statement, read his pre-trial statement into the record. He detailed the encroachment allegedly done by the Neighbors — they had moved or discarded his surveyor's stakes that had marked the property lines, a criminal violation of R.C. 2909.07. Because he was the sole owner of Venta and claimed he had been permitted to represent it in the Federal case,[2] he asserted he could represent the corporation's interests as they were, essentially, his own. For relief, he demanded that the Neighbors surrender the disputed portions of abutting property to him and requested $170,000 in uncategorized compensatory damages and $1,000,000 in punitive damages.
 {¶ 6} After extensive argument over whether Alsenas, a non-owner of sublot nine, could make a claim in ejectment or represent Venta as a pro se litigant, the judge granted the motion for directed verdict.
 {¶ 7} This court granted the Neighbors' motion to dismiss Venta's appeal, and proceeded to accept only Alsenas' individual assignments of error. He asserts four errors for our review, reproduced verbatim.
 {¶ 8} I. Judge Lawter's (sic) Granting Defendants' Motion for Directed Verdict, Pursuant to Rule 50-a Is a Flagrant Violation of Ohio Rev. Code Section 2909.07.
 {¶ 9} II. The Second Error by His Honor Judge Lawter (sic) Is the Judge's Violation of the Civil Rule 50, on Which His Verdict Is Based.
 {¶ 10} III. His Honor the Judge R. Lawter, (sic) in His `Judgment Entry' Said, That `Defendant's Motion for Directed Verdict at the Close of Plaintiff's Opening Statement (Emphasis Mine S. A.), Pursuant to Rule 50-a Is Granted. . . .' He Is Lying. The Truth and the Fact Is That the Plaintiff Was Not Allowed to Finish His Two Part Opening Statement, He Was Interrupted by the Judge and Was Not Allowed to `Close' His Opening Statement Contrary to His Honor the Judge's Journal Entry in Violation of Rule 50-A. As Demonstrated in Court Reporter's Transcript Hereby Attached, this Lie and Other Three Errors Are Fully Explained in the Accompanying Brief.
 {¶ 11} IV. The Fourth, His Honor Judge Lawter's (sic) Error Is in Violation of the `Code of Judicial Conduct,' Canon 1, and Canon 2, and Canon 3A(4) and `Code of Professional Responsibility', Canon 9.
 {¶ 12} Under Civ.R. 50(A)(4), a judge may grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party against whom the motion is directed, he finds that reasonable minds could come to but one conclusion on a determinative issue, and the conclusion is adverse to the non-moving party.[3] Review of the grant or denial of a motion for directed verdict is de novo.[4]
"A trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made."[5]
 {¶ 13} Alsenas' contends that the judge failed to state his reasons for granting the directed verdict as mandated by Civ.R. 50(E).[6] It is undisputed that no specific findings were made on the record, but this need not require remand.
 {¶ 14} The rationale for reversing an entry of a directed verdict, unaccompanied by stated reasons therefore, can be summarized as follows:
 {¶ 15} Rule 50(E) requires the trial court to narrow its focus to the particular area of deficiency alleged by the movant. By doing so, an unsuccessful non-movant is put on notice as to where the case has failed. This permits the non-movant a realistic and practical basis upon which to decide whether or not to seek review of the decision. The rule also enables a reviewing court to refrain from expending inordinate resources in reviewing an entire record to see if every element of every claim has been established in the absence of a prior suggestion by the trial court that they have not been.[7]
 {¶ 16} As the Twelfth District Court of Appeals stated in Campbellv. Pritchard,[8] [a]lthough Civ.R. 50(E) provides that the trial court shall state the basis for its decision to direct a verdict, the party against whom the motion is granted waives his right to protest the absence of this requirement by failing to timely raise the error to the trial court.[9] If further explanation was required, it was incumbent upon appellant to request such from the trial court.[10]
 {¶ 17} The record reveals that the basis for the directed verdict was obvious. Alsenas clearly understood the rationale for granting the directed verdict because he argues in his appellate brief that, because he is not an attorney, that deficiency should not affect his ability to represent Venta's interests. His lack of knowledge over the state of the law[11] does provide this court with a basis to reverse the judge's decision where he has demonstrated no prejudice, and did not request clarification or identification of the reasons the case was being dismissed. Alsenas' assignments of error are not well taken.
 {¶ 18} R.C. 5303.03 provides: "In an action for the recovery of real property, it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession. It is not necessary to state how the plaintiff's estate or ownership is derived."[12]
 {¶ 19} Claims brought under this statute equate to the common-law action in ejectment and are actions in law.[13] Even though under R.C.5303.03 all questions over to the parties' title, legal or equitable, may be raised in an action for recovery of real property, the plaintiff must still produce evidence of a superior legal estate or title in order to prevail.[14]
 {¶ 20} Here it was undisputed that Alsenas was not the record title holder of sublot nine, and could not have personally pursued a claim for ejectment for he lacked title to, or estate in, the subject property that was superior to that of any Defendant.[15] because Alsenas could prove no individual claim under R.C. 5303.03, directing a verdict for defendants was correct.
 {¶ 21} In his opening statement, Alsenas told the jury that throughout the life of the dispute, he has had to have sublot nine surveyed and implanted with metal boundary-marking stakes on several occasions because the Neighbors kept removing them and, as a result, he sustained financial loss. He alleged that such conduct was criminal mischief in violation of R.C. 2909.07, but no such allegations were made in his complaint.
 {¶ 22} R.C. 2307.61 does provide for a civil cause of action for compensation against one who has damaged the property of another but, even if we assume for the sake of argument that this statute provided Alsenas with such a right,[16] as a condition precedent he would have had to comply with mandatory, pre-suit notice provisions in that statute, and he did not.[17] As such, Alsenas could not maintain a claim against the neighbors rooted in statutory law.
 {¶ 23} The common law of this state specifically disfavors civil actions for money damages based on wrongs suffered resulting from a violation of criminal statutes. As the Tenth District Court of Appeals has recently observed,
 {¶ 24} `Whether or not appellant can recover on his allegations of [criminal conduct] is an issue that only involves a question of law. In Ohio, allegations constituting perjury, subornation of perjury and conspiracy to commit perjury, all of which, if proved, may be punishable under criminal statutes, are not recognized for public policy reasons as bases for civil lawsuits.'[18] The Court ruled that, as a matter of law, State Farm was entitled to summary judgment in respect of Reasoner's claimed tort of perjury. "Summary judgment may be rendered where the pleadings and the arguments of the party seeking summary judgment clearly establish that the nonmoving party has no legally cognizable cause of action."[19]
 {¶ 25} In Biomedical Innovations v. McLaughlin,[20] the plaintiff, like Alsenas, asserted a claim for civil damages under a theory that the defendant had engaged in criminal mischief in violation of R.C.2909.07. The court ruled that [a]ppellant's claim for civil damages was inappropriate because it was based upon an alleged violation of a criminal statute under which criminal penalties result. We agree with this principle, and hold that Alsenas could not, as a matter of common law, maintain an action on his own behalf on the basis that the Neighbors removed boundary markers he had placed on sublot nine.
 {¶ 26} Finally, we note that Alsenas' fourth assignment of error, couched in terms of the Judicial Code of Conduct and Code of Professional Responsibility, contends that, in granting the motion for a directed verdict, the judge is, in a sense, endorsing unlawful encroachment upon his land. This is not so. The judge was following the law applicable to the practice of law in this state and any prejudice suffered by Alsenas through his own misconception of the law or refusal to seek counsel to adequately represent his interests, or that of Venta, is his responsibility alone.
Judgment affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Alsenas v. Brecksville, (6th Cir., 2000) 221 F.3d 1333.
[2] Parenthetically, Alsenas was not permitted to represent Venta's interests in either Federal Court or other Common Pleas filings. In actuality, in his Federal case, the judge simply proceeded to grant the various defendants' pretrial motions to dismiss or for judgment on the pleadings, while noting that, in Federal court, non-attorneys may not represent a corporation. In a prior, unidentified case in Cuyahoga County Common Pleas Court, the judge simply proceeded to decide the case as if Alsenas, in his personal capacity, was the only party-plaintiff. See Alsenas' Merit Brief, p. 11.
[3] See Civ.R. 50(A)(4).
[4] Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90, 509 N.E.2d 399;Steppe v. K-mart Stores (1999), 136 Ohio App.3d 454, 737 N.E.2d 58.
[5] Brinkmoeller v. Wilson (1975), 41 Ohio St.2d 223, 325 N.E.2d 233, syllabus. See, also, Archer v. Port Clinton (1966), 6 Ohio St.2d 74,215 N.E.2d 707.
[6] See Civ.R. 50(E).
[7] Pusey v. Greif Bros. Corp. (1997), 124 Ohio App.3d 725, 729-730,707 N.E.2d 551.
[8] (1991), 73 Ohio App.3d 158; 596 N.E.2d 1047.
[9] Darcy v. Bender (1980), 68 Ohio App.2d 190, 192, 428 N.E.2d 156,157.
[10] Grange Mut. Cas. Co. v. Fleming (1982), 8 Ohio App.3d 164,456 N.E.2d 816.
[11] It is undisputably black-letter law that an agent of a corporation who is not an attorney may not, in any circumstance, represent the corporation as a pro se advocate in court. See Union Savings v. Owner'sAid (1971), 23 Ohio St.2d 60, 262 N.E.2d 558.
[12] Turnbull v. Xenia (1946), 80 Ohio App. 389, 392, 69 N.E.2d 378,379.
[13] Avery v. Avery (1958), 107 Ohio App. 199, 200, 157 N.E.2d 917,918, Norris v. Bhd. of Ry. Clerks Natl. Bank of Cincinnati (1932),43 Ohio App. 396, 397-398, 183 N.E. 92, 93; Todd v. Sailing (Apr. 23, 1990), Warren App. No. CA89-03-022.
[14] Avery, supra, 107 Ohio App. at 202, 157 N.E.2d at 919, Thorntonv. Guckiean Co., Inc. (1991), 77 Ohio App.3d 794, 603 N.E.2d 1066,Procterville v. Boston (June 24, 1985), Lawrence App. No. 1730,
[15] We acknowledge that Alsenas has filed a notice with this court stating that, after the trial, he, as an officer of Venta, transferred sublot nine to himself through a quit-claim deed. Our review, however, is confined to the record made in the trial court, and this later development can have no bearing on our decision. See App.R. 9.
[16] No party raised the possibility of a claim or defense founded on R.C. 2307.60, but our role in determining the propriety of the judge's grant of directed verdict extends to whether Alsenas could have recovered under any theory put before the jury.
[17] See R.C. 2307.61(A)(2), X-Technology, Inc. v. M.J. Technologies, 2002-Ohio-2259, Cuyahoga App. No. 80126, Buckeye Check Cashing, Inc. v.Proctor (June 15, 1999), Franklin App. No. 98AP-1103.
[18] Reasoner v. State Farm Mut. Auto Ins. Co., 2001-Ohio-878, Franklin App. No. 01AP-490, citing Costell v. Toledo Hospital (1988),38 Ohio St.3d 221, 223-224, 527 N.E.2d 858, and Schmidt v. State AerialFarm Statistics, Inc. (1978), 62 Ohio App.2d 48, 51, 403 N.E.2d 1026.
[19] Dresher v. Burt (1996), 75 Ohio St.3d 280, 297-298,662 N.E.2d 264.
[20] (1995), 103 Ohio App.3d 122; 658 N.E.2d 1084.